Albert **KEISER**, Plaintiff,

v.

**AMERICAN PRESIDENT LINES, LTD.**, Defendant.

**No. 73 Civ. 5265–LFM.**

United States District Court, S. D. New York.

Nov. 19, 1974.

Paul C. Matthews, New York City, for plaintiff.

Kirlin, Campbell & Keating, New York City, for defendant; Robert P. Hart, New York City, of counsel.

## OPINION

MacMAHON, District Judge.

Plaintiff originally brought this action under the Jones Act to recover damages for personal injuries, sustained by him in the course of his employment as a seaman, and for maintenance and cure. The claim for personal injuries was tried to a jury which found for defendant. Pursuant to stipulation, the court agreed to decide plaintiff's claims for maintenance and cure.

Plaintiff's claim for maintenance can be separated into two categories: (1) maintenance from January 31, 1974 through July 2, 1974, the date of trial, in the amount of $1,192.00, and (2) future maintenance for six months from the date of trial, in the amount of $1,472.00.

A seaman's right to maintenance, when injured or ill and unable to work arises from his contractual relationship with the shipowner.[1] Consequently, the seaman is entitled to the maintenance which has accrued to date of trial, unless forfeited by him.[2]

Defendant has not shown any conduct by plaintiff amounting to a forfeiture of accrued maintenance.[3] We, therefore, grant plaintiff's application for maintenance to date of trial, in the amount of $1,192.00.

A seaman can also recover "such amounts as may be needful in the immediate future for the maintenance . . . for a period which can be definitely ascertained."[4]

Plaintiff argues that maintenance should be awarded for six months from the date of trial, because defendant's physician estimated that plaintiff would reach maximum cure in from three to six months from that time and that any doubt in fixing the period for future maintenance should be resolved in favor of the seaman. It would be speculative for the court to fix a date of maximum cure somewhere between three and six months. Since defendant, by its

1. O'Donnell v. Great Lakes Dredge & Dock Co., 318 U.S. 36, 63 S.Ct. 488, 87 L.Ed. 596 (1943).

2. Calmar S.S. Corp. v. Taylor, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993 (1938); Ammar v. American Export Lines, Inc., 326 F.2d 955 (2d Cir.), cert. denied, 379 U.S. 824, 85 S.Ct. 48, 13 L.Ed.2d 34 (1964), rehearing denied, 379 U.S. 985, 85 S.Ct. 640, 13 L.Ed. 2d 579 (1965).

3. An example of conduct which would cause a seaman to forfeit maintenance is leaving the marine hospital against physician's orders. 2 Norris, The Law of Seamen § 597 at 140–141 (1970).

4. Calmar S.S. Corp. v. Taylor, supra, 303 U. S. at 531–532, 58 S.Ct. at 655.

physician expert, has admitted that it will take at least three months from trial for plaintiff to reach maximum cure and plaintiff has not established a longer period, future maintenance can only be awarded for that period in the amount of $736.00.

Plaintiff also claims expenses for private medical treatment of his injuries, divisible into two categories: (1) medical treatment for a hernia, amounting to $1,256.50, and (2) medical treatment for a shoulder injury, amounting to $2,333.75.

A seaman generally does not have a free hand in choosing where to go for medical treatment. This is true because the United States Public Health Service maintains marine hospitals at which a seaman may obtain free medical care.[5] An injured seaman who is issued a hospital ticket to the nearest marine hospital by his vessel usually must accept the medical service available to him in that hospital and will not be reimbursed for the cost of private medical treatment which he seeks on his own.[6] There are, however, several exceptions to this rule.

One exception is the case of a seaman who must undergo emergency treatment, making it impossible for him to go to the public hospital.[7] Plaintiff's medical treatment, in the amount of $1,256.50, for his emergency hernia operation clearly falls within this exception.[8]

Another exception is the case of a seaman who cannot obtain proper treatment at the public hospital due to the physician's failure to diagnose his injury correctly.[9] Here, plaintiff visited the United States Public Health Service Clinic, in New York City, on three occasions and received no active treatment. Nor was he given any diagnostic tests, such as an arthrogram, to detect his injury which was subsequently diagnosed as a torn rotator cuff. We think these facts warrant the conclusion that the needed treatment was not tendered due to the physician's failure to diagnose the injury properly.[10] We, therefore, find that the medical expenses, in the amount of $2,333.75, incurred for the shoulder operation are allowable.

Accordingly, we grant plaintiff's application for maintenance, in the amount of $1,928.00, and for cure, in the amount of $3,590.25, making a total allowance of $5,518.25.

Submit judgment within fifteen (15) days from the date of this opinion.

---

5. 2 Norris, The Law of Seamen § 595 at 134–136 (1970).

6. Ammar v. American Export Lines, Inc., *supra*; 2 Norris, The Law of Seamen § 595 at 136–139 (1970).

7. Diaz v. Gulf Oil Corp., 237 F.Supp. 261 (S.D.N.Y.1965).

8. Plaintiff had made arrangements for hernia surgery at the marine hospital on Staten Island on November 5, 1973. However, when he was visiting Ashland, Pennsylvania, on November 1, 1973, his hernia became so se-

vere that an immediate operation was required.

9. Robinson v. Pocahontas, Inc., 477 F.2d 1048 (1st Cir. 1973); George v. Chesapeake & O. Ry., 348 F.Supp. 283 (E.D.Va.1972).

10. In Robinson v. Pocahontas, Inc., *supra*, which involved a factual situation very similar to the present case, the court allowed private medical expenses because the marine hospital failed to diagnose a ruptured disc in plaintiff's back, although he had gone to the hospital on several occasions for treatment for his back injury.