Paul C. BILLIOT

v.

TOUPS MARINE TRANSPORT, INC.

Civ. A. No. 78–295.

United States District Court,
E. D. Louisiana.

March 2, 1979.

James A. Wysocki, Windhorst, Heisler, DeLaup & Wysocki, New Orleans, La., for plaintiff.

James Hanemann, Jr., Poitevent & Hanemann, New Orleans, La., and Benjamin C. King, Jr., Lake Charles, La., for defendant.

## MEMORANDUM AND ORDER

JACK M. GORDON, District Judge.

This matter is before the Court on the motion of plaintiff, Paul C. Billiot, for a preliminary injunction to compel the payment of maintenance at a daily rate in excess of $8.00 per day. At the time the motion was filed, the Court was concerned that injunctive relief on this issue might not be proper, and accordingly a status conference was held on January 25, 1979, so that the Court could discuss the matter with counsel for both plaintiff and defendant.

It was agreed that the sole issue of the procedural rectitude of using an injunction in order to determine the daily rate of maintenance would be argued on February 28, 1979, and a briefing schedule for that issue alone was set forth in a minute entry of January 25, 1979. Subsequently, another motion for preliminary injunction was filed on the maintenance issue in Civil Action No. 78–579 of this docket, *Charles Davis v. Bayou Dredging Company, et al.* Since counsel for both plaintiff and defendant in that case were the same as in the captioned matter, an identical briefing and argument schedule was set in Civil Action No. 78–579 by minute entry of January 31, 1979.

The Court heard the arguments of counsel for the two cases on February 28, 1979, as scheduled, with identical briefs relied on in each case. After reviewing the arguments and memoranda of counsel, as well as the applicable law, the Court is of the opinion that use of an injunction is an improper procedure for determining a seaman's entitlement to a particular rate of maintenance, and for the following reasons, will therefore deny both motions for preliminary injunction. Since identical briefs were filed in each civil action, the written reasons filed in the captioned matter will also be filed in Civil Action No. 78–579.

### REASONS

The plaintiff has sued under the Jones Act for negligence, as well as under the general maritime law for unseaworthiness, maintenance and cure. He is currently being paid maintenance at a rate of $8.00 per day, but contends that the proper amount to which he is entitled is at least $15.00 per day. Specifically, he contends that he is suffering irreparable harm from defendant's failure to pay the proper amount of maintenance, and that a preliminary injunction should issue, compelling defendant to pay a higher amount. Plaintiff admits that there is a fact issue concerning the exact amount to which he is entitled, which fact issue would preclude a summary judgment under Federal Rule of Civil Procedure 56. However, plaintiff asserts that under the

holding of *Calmar S. S. Corp. v. Taylor,* 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 526 (1938), he is entitled to a minimum of the "reasonable cost of maintenance," as an injured seaman. Plaintiff therefore contends that, by analogy to the Fair Labor Standards Act, 29 U.S.C. 201, et seq., which provides in § 217 for use of an injunction to compel an employer to pay the minimum wage, plaintiff should be entitled to use an injunction to compel defendant to pay him the minimum reasonable cost of his maintenance.

Plaintiff bases his contention that he is entitled to at least $15.00 per day in maintenance on the recent decision in *James B. Robinson v. Plimsoll Marine, Inc., et al.,* 460 F.Supp. 949 (E.D.La.1978). He grounds his assertion of irreparable harm, warranting an injunction, in factual assertions of the high cost of living, the impossibility of getting the proper amount of nourishing food and rest if he is forced to live on $8.00 a day, and the possibility that he could be forced either to starve to death, or return to work before it is medically advisable, should the injunction not issue. The Court is not without sympathy to the plaintiff's plight, but must reject these arguments as being legally unsound.

To begin with, plaintiff has cited absolutely no legal authority for using injunctive relief on the issue of maintenance, and the Court has been unable to find any. Plaintiff relies, instead, solely on his analogy to § 217 of the Fair Labor Standards Act (FLSA), 29 U.S.C. 201, et seq. That analogy fails for several reasons.

First, § 217 of the FLSA provides for the use of injunctive relief whenever there is a violation of § 215(a)(2), including thereunder a violation of § 206, which prescribes a specific statutory minimum wage. Currently, the minimum wage is $2.90 per hour. In contrast, there is no fixed statutory minimum amount of maintenance which is to be paid an ailing seaman, but only a judicially decreed "reasonable cost of maintenance," *Calmar S. S. Corp. v. Taylor, supra,* which cost of maintenance ideally should be determined on a case-by-case basis. Thus, there is no real fact issue when a failure to

pay the statutory minimum wage occurs, for an employee is either getting $2.90 per hour, or he is not. However, two minds may differ on what dollar amount may constitute a "reasonable cost of maintenance" for any one seaman.

■ Second, the only person authorized by the FLSA to seek an injunction is the Secretary of Labor. *See, King v. Carey,* 405 F.Supp. 41 (W.D.N.Y.1975); *E. E. O. C. v. American Telephone and Telegraph Co., et al.,* 365 F.Supp. 1105 (E.D.Pa.1973), and cases cited therein. An employee cannot sue in his own behalf for a § 217 injunction, but is restricted to a suit solely for back wages and liquidated damages. *Bowe v. Judson C. Burns, Inc., et al.,* 137 F.2d 37 (3d Cir. 1943). The reason why injunctive relief is provided to the Secretary of Labor is that the FLSA provides for no administrative sanctions which the Secretary can impose to ensure voluntary compliance with the minimum wage laws, so the only enforcement procedure which the Secretary can resort to is a § 217 injunction. *Dunlop v. Davis,* 524 F.2d 1278 (5th Cir. 1975).

Since a seaman is more properly analogized to an employee than to the Secretary of Labor, and an employee cannot sue for an injunction to force his employer to pay him the statutory minimum wage, the FLSA analogy actually fails to support the plaintiff's argument in favor of an injunction compelling maintenance payments, and, in fact, works against it. Whatever "irreparable harm" might befall a seaman without the proper maintenance might also befall an employee without the proper wages, and yet, the employee does *not* have the right to injunctive relief.[1]

■ Having found plaintiff's analogy to an FLSA § 217 injunction to be without merit, the Court must turn to admiralty law regarding the appropriate means of enforcing a seaman's right to maintenance. A review of that body of law shows that a

motion for summary judgment is the only permissible pre-trial procedure to determine the daily rate of maintenance.

To begin with, the plaintiff has not fully quoted *Calmar S. S. Corp. v. Taylor, supra,* when making his assertion that the United States Supreme Court has prescribed that an injured seaman is entitled to a minimum of a "reasonable cost of maintenance." That particular sentence reads in full as follows, at 58 S.Ct. 655:

> . . . The seaman's recovery must therefore be measured in each case by the *reasonable cost of that maintenance* and cure *to which he is entitled at the time of trial,* including, in the discretion of the court, such amounts as may be needful in the immediate future for the maintenance and cure of a kind and for a period which can be definitely ascertained. (emphasis supplied)

The emphasized language reveals that the *Calmar* court contemplated that the maintenance issue was one relegated to a trial on the merits. It seems that this has always been understood to be the case in admiralty courts, and plaintiff has cited no authority to the contrary.

This is not to say that, where appropriate, the maintenance issue could not be disposed of prior to trial on a properly framed motion for summary judgment. Indeed, the following language is found in *Duplantis v. Williams-McWilliams,* 298 F.Supp. 13, 14 (E.D.La.1969):

> As the defendant has admitted in his answer that the plaintiff is a seaman, and is thus entitled to maintenance under the general maritime law, *the only issue remaining is the proper rate of the maintenance award. This is a factual question which must be submitted to the jury* when the claim for maintenance is joined with a claim under the Jones Act arising out of the same facts, *but it may, of course, "be determined on motion for*

---

1. In *Morgan v. Fletcher,* 518 F.2d 236 (5th Cir. 1975), when an employee was fired, and as a result the family lost 45% of its income, thus forcing a foreclosure on its mortgage, the court held there was *no* irreparable harm such as to

warrant injunctive relief, and that monetary relief in the form of back pay and damages would suffice, should the plaintiff win at a trial on the merits.

*summary judgment* where the extraneous materials in support of the motion establish with certainty that there is no triable issue of fact, and in that event summary judgment should·be rendered for the party entitled thereto as a matter of law." citing *Hudspeth v. A & G Stevedores,* 266 F.Supp. 937, 943, 944. (emphasis supplied)

In the *Duplantis* decision, a partial summary judgment was in fact granted, raising the daily rate of maintenance from $6.00 to $8.00 per day.[2]

█ The issue of maintenance has never been considered one appropriate for summary disposition. Norris, The Law of Seamen, 3d Ed., § 578, p. 100. Furthermore, the issue of the daily *rate* of maintenance is one which the employer has the right to dispute, and litigate at a trial, provided there is a good faith dispute. *Constance v. Johnston Drilling Co.,* 422 F.2d 369 (5th Cir. 1970). In *Constance,* the employer paid the seaman $2.00 per day *less* than the amount of maintenance ultimately awarded after a trial on the merits. The Fifth Circuit held that the employer had the right to litigate the rate issue, and that unless the employer had been arbitrary or unreasonable in continuing to pay the lesser amount, there would be no award for either damages or attorney fees.

█ Indeed, an award of damages and attorney fees is the seaman's relief for the failure to pay the maintenance due, and *not* a preliminary injunction.

It has certainly not escaped the attention of the courts that all of the occurrences to which plaintiff refers as "irreparable harm" might happen to a seaman who has been wrongfully denied his "reasonable cost of maintenance." The courts have recognized that a seaman might not be able to afford to eat right, and thus his physical condition might worsen. He could also be forced

back to work before it is medically advisable, and this also could help his condition to either deteriorate or never heal. However, in cases where such "irreparable harm" did in fact occur, the relief which the courts have chosen to afford the seaman is an additional cause of action for damages and attorney fees where the failure to pay the proper maintenance has been willful and callous. *Vaughan v. Atkinson,* 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962).

In *Vaughan* the injured seaman was forced to work as a taxi driver because his employer refused to pay him maintenance, and he could not otherwise afford to live. The United States Supreme Court held that (1) his earnings as a taxi driver could not be deducted from the maintenance award, and (2) he was entitled to damages and attorney fees in addition to past due maintenance because his employer's refusal to pay had been willful and callous.

Likewise, in *Sims v. United States War Shipping Administration,* 186 F.2d 972 (3d Cir. 1951), cert. den. 342 U.S. 816, 72 S.Ct. 31, 96 L.Ed. 617, the plaintiff seaman was put on a special diet and rest regime by his physician which he could not afford to follow by virtue of his employer's refusal to pay him maintenance. He was economically forced back to work instead, and as a result, his condition worsened. It was held that after a trial on the merits, Sims was entitled not only to the increased medical cost of his worsened condition, but to damages for the failure to pay maintenance.

█ In addition to any increased medical costs, damages, and attorney fees, another punitive factor that a court can award for the failure to pay maintenance is pre-judgment interest on whatever amounts the seaman does recover in maintenance and cure, with interest to run from the date the employer should have paid. See, Gilmore &

---

2. It should be noted at this juncture that counsel informed the Court in chambers that an injunction procedure was used in the recent *Robinson* decision, supra, of Section "E" of this Court, in reaching the decision to raise the daily rate of maintenance to $15.00 per day. However, the procedural issue was nowhere mentioned in the written decision entered on October 13, 1978, and may not have been considered by that Court. Therefore, the *Robinson* decision cannot be said to be controlling, or even persuasive, on the injunction issue in this case.

Black, *The Law of Admiralty* (1975 ed.), p. 314, and cases cited therein.

█ The above line of authority therefore compels this Court to conclude that an injured seaman does not have the right to injunctive relief on the issue of payment of maintenance, and that an employer has the right to dispute, in good faith, the rate of maintenance to be paid. The Court further concludes that if it should later be determined, either at a trial on the merits or on motion for summary judgment, that the failure to pay a particular rate of maintenance was not in good faith, but was willful and callous, then monetary relief may be available to the seaman in the form of damages or attorney fees. Accordingly, the Court hereby DENIES the plaintiff's motion for preliminary injunction on the ground that it is procedurally incorrect.[3]

---

**3.** In denying the motion for preliminary injunction, the Court makes no comment on plaintiff's assertion that the daily rate of maintenance in 1979 should be at least $15.00 per day. It may well be that after a trial on the merits, the evidence adduced will prove $8.00 per day to be inadequate. However, the Court does note, with respect to the injunction issue, that the persistence of courts nationally in awarding a flat rate of $8.00 per day reflects a certain change in attitude as to whether maintenance is really viewed today as the financial support it was originally intended to be. In this regard see Gilmore & Black, supra, at p. 307, where it is stated:

> The lower courts seem to have steered a middle course between the broadest and narrowest possible readings of Vaughan. Maintenance seems never to have been awarded for periods during which the plaintiff was receiving free care and medical attention in hospital—a result which is consistent with the idea that, if there are no expenses, there is no right to maintenance. On the other hand the recent cases, almost without exception, award maintenance at a flat rate per day (usually $8.00 but occasionally $6.00) without any further inquiry. The customary $8.00 rate seems to have become established

by the late 1940's; awards in pre-World War II cases were at lower rates. Despite the continuing inflation since the 1940's the $8.00 rate (which is frequently specified in collective bargaining agreements between ship-owners and maritime unions) has not been increased. *The failure to adjust the rate to reflect inflation suggests that maintenance is no longer regarded as a living allowance sufficient to support even the proverbially impecunious unmarried male seaman in the modest circumstances to which he is thought to be entitled.* If all he has to live on is his daily maintenance award, he will have to supplement it by finding work; if his earnings are deducted, he will starve. The disappearance from recent cases of the once not uncommon inquiry into the plaintiff's collateral earnings reflects these facts of life. It could of course be argued that a hypothetical seaman lucky enough to be endowed with a large private income would not be entitled to maintenance but the case is not likely to arise in real life. It is true that the Second Circuit in 1973 reiterated the proposition that a plaintiff who incurred no expenses is not entitled to maintenance but it is fair to add that the judges seemed to be skeptical of the plaintiff's entire story. (emphasis supplied)