Joseph INCANDELA, Plaintiff-Appellant,

v.

AMERICAN DREDGING COMPANY, Defendant-Appellee.

No. 1379, Docket 80–9136.

United States Court of Appeals, Second Circuit.

Argued May 27, 1981.

Decided Sept. 4, 1981.

Paul C. Matthews, New York City, for plaintiff-appellant.

Michael D. Martocci, New York City (Frank J. Pallone, New York City, of counsel), for defendant-appellee.

Before FEINBERG, Chief Judge, and LUMBARD and MANSFIELD, Circuit Judges.

MANSFIELD, Circuit Judge:

Joseph Incandela appeals from a judgment n.o.v. entered on November 24, 1980, by Judge Constance Baker Motley of the United States District Court for the Southern District of New York granting in part defendant's motion to reduce a jury verdict awarding $24,000 for maintenance due plaintiff as a seaman following his sustaining injuries aboard defendant's dredge, for suffering, and for attorney's fees. The district court reduced the award to $16,800 after eliminating amounts for suffering and counsel fees.

The principal issues relate to the amount to be awarded a seaman for maintenance and whether he is entitled to counsel fees incurred to obtain the award. The district court instructed the jury that any award for maintenance should be calculated on the basis of the $13.50 per day rate actually paid by defendant to Incandela in lieu of maintenance during the period immediately following plaintiff's accident, rather than allowing it to rely on evidence put in by plaintiff that his actual expenditures for maintenance had been approximately $26.80 per day. We hold that an award calculated at the higher rate should be entered on remand. We also vacate the district court's decision to eliminate the jury's counsel fees

award, and remand for further proceedings to determine the amount of counsel fees which should be awarded. In all other respects the judgment is affirmed.

Incandela brought this action against American Dredging Co. for lower back injuries sustained on August 29, 1976, when he was employed as a seaman aboard one of defendant's dredges. Incandela had been assigned the task of cleaning and regreasing a number of large bolts which his coworkers were tossing up to him from the pump room below. It was Incandela's testimony that he hurt his back when he bent down to pick up one of the bolts from the floor and slipped on the grease which the bolts had deposited when they landed.

At the close of the evidence, the district court conferred at length with counsel for both sides on the question of maintenance. Counsel informed her that there was a dispute as to the daily rate at which maintenance, if owed, was to be calculated. Plaintiff argued that the rate should be at least $25.00 per day, which in his opinion was supported by plaintiff's testimony at trial that his living expenses after suffering the injury amounted to between $175 and $200 per week. Defendant argued that plaintiff's testimony as to his own living expenses was insufficient to support an instruction on the maintenance rate question, and that one of two alternate rates should be used instead: (a) $8.00 per day, which was the union rate at the time of plaintiff's accident, or (b) $13.50 per day, which was the amount that defendant had actually paid to plaintiff in lieu of maintenance in the period immediately following the accident. The district court ruled that plaintiff's testimony as to what his actual living expenses had been did not meet his burden of proving what the maintenance rate should be. She explained her ruling to plaintiff's counsel:

You had the burden of proving what the employer was required to pay for maintenance based on what the employer had previously paid, or some such thing, or

what is generally paid in the industry for maintenance, not to have this man tell us he spent $200 a week as a single man himself to live in New York City.

She then ruled that, since plaintiff was not working under a union contract and was therefore not covered by the $8.00 union rate, she would charge the jury that any maintenance award should be calculated on the basis of $13.50 per day, the rate initially paid by defendant.

The jury returned a verdict awarding plaintiff $24,000 on the maintenance and cure count.[1] That award consisted of the following elements: $2,000 for cure, $14,800 for maintenance (based on the $13.50 rate), $1,500 for suffering, anguish and aggravation resulting from defendant's failure to pay maintenance when asked, and $5,700 in counsel fees. The district court then granted in part defendant's motion for judgment notwithstanding the verdict, setting aside the jury award for counsel fees and for suffering. Judge Motley refused to consider plaintiff's cross-motion for a new trial, however, because plaintiff refused to pay half of the cost of preparing a copy of the trial transcript for the use of the court.

The first question is whether the district court erred in instructing the jury that any maintenance award would be limited to $13.50 per day, rather than allowing it to rely on plaintiff's testimony that his actual expenses had been in the neighborhood of $187.50 per week or $26.80 per day. For centuries courts have imposed on shipowners the duty of providing maintenance and cure for their injured seamen. As the Supreme Court has recently written:

The shipowner's ancient duty to provide maintenance and cure for the seaman who becomes ill or is injured while in the service of the ship derives from the "unique hazards [which] attend the work of seamen," and fosters the "combined object of encouraging marine commerce and assuring the well-being of seamen." ... [T]he breadth and inclusiveness of the shipowner's duty assure its easy and

1. The jury returned verdicts for defendant on plaintiff's negligence and unseaworthiness

counts. We see no reason to disturb these results.

ready administration for "[i]t has few exceptions or conditions to stir contentions, cause delays and, invite litigations." *Vella v. Ford Motor Co.*, 421 U.S. 1, 3–4, 95 S.Ct. 1381, 1382–83, 43 L.Ed.2d 682 (1975), *quoting from Aguilar v. Standard Oil Co.*, 318 U.S. 724, 727, 63 S.Ct. 930, 932, 87 L.Ed. 1107 (1943); *Farrell v. United States*, 336 U.S. 511, 516, 69 S.Ct. 707, 709, 93 L.Ed. 850 (1949).

To fulfill its purpose, the maintenance rate should be set at a level which will "provide a seaman with food and lodging when he becomes sick or injured in the ship's service." *Vaughan v. Atkinson*, 369 U.S. 527, 531, 82 S.Ct. 997, 999, 8 L.Ed.2d 88 (1962). Nevertheless, since at least the early 1950's many courts have fallen into the habit of awarding maintenance at the fixed rate of $8.00 per day, regardless of the gradual erosion of the purchasing power which the amount represents. 1B *Benedict on Admiralty* § 51 (1980); G. Gilmore & C. Black, *The Law of Admiralty* 307 (2d ed. 1975). On the other hand, some courts have awarded higher maintenance rates after seamen have introduced evidence of higher living costs. *See, e. g., Caulfield v. AC & D Marine, Inc.*, 633 F.2d 1129, 1132–33 (5th Cir. 1981); *Gauthier v. Crosby Marine Service, Inc.*, 499 F.Supp. 295, 299 (E.D.La. 1980); *Robinson v. Plimsoll Marine, Inc.*, 460 F.Supp. 949, 950 (E.D.La.1978). *Cf. Tate v. American Tugs, Inc.*, 634 F.2d 869, 870–71 (5th Cir. 1981) (maintenance rate should vary to reflect the quality of food and lodging on ship and the cost of their equivalents on shore). We adopt this latter view rather than adhere to the rigid application of a frozen dollar figure which stands as a symbolic but unfulfilled promise to seamen that their maintenance needs will be met.

■ While we approve the district court's departure from the $8.00 figure, we reject its conclusion that a seaman's actual expenditures are insufficient to support the award of a higher maintenance rate. In our view, a seaman makes out a prima facie case on the maintenance rate question when he proves the actual living expenditures which he found it necessary to incur during his convalescence. See *Caulfield, supra*, 633 F.2d at 1132–33. Those expenditures must, of course, be reasonable, and the defendant is free to put in rebuttal evidence showing that the seaman's expenditures were excessive. *See Billiot v. Toups Marine Transport, Inc.*, 465 F.Supp. 1265, 1268 (E.D.La. 1979). But to require every injured seaman seeking a court award for maintenance to go to the expense of putting on expert witnesses before he will be permitted to recover more than a fixed nominal maintenance rate would be to place an unfair burden on those whom the idea of maintenance was designed to assist.

■ In this case, plaintiff's uncontradicted testimony that he spent between $175 and $200 per week on maintenance costs made out a prima facie case for an award of $26.80 per day (one-seventh of $187.50, the mid-point between the two estimates). Defendant made no attempt to introduce rebuttal evidence on this point, and would have faced an uphill battle if it had tried: it was conceded at oral argument that the cheapest room at the Seamen's Institute in New York City now costs $18.00 per night. Therefore it was error for the district court to have refused to allow the jury to utilize the $26.80 figure in calculating the maintenance owed to plaintiff.

■ Once plaintiff's testimony was in the record, a prima facie case for the $26.80 rate was made out and the burden shifted to the defendant to demonstrate that plaintiff's actual expenditures were excessive, in light of any realistic alternatives for room and board available to him in New York. Since the $26.80 figure was not disputed and was reasonable in view of living costs in New York the $13.50 figure merely represented defendant's arbitrary decision to pay plaintiff half of his regular salary, and was not intended to reflect in any way the cost of housing and food in New York. It was not rebuttal evidence on the issue of maintenance and can therefore be disregarded. Incandela is therefore entitled to a maintenance award calculated at the rate of $26.80 per day.

Turning to the question of whether Incandela is entitled to counsel fees and, if so, in what amount, we have construed *Vaughan v. Atkinson,* 369 U.S. 527, 530–31, 82 S.Ct. 997, 999, 8 L.Ed.2d 88 (1962) as entitling a seaman to counsel fees in a maintenance case where the employer was "callous" or "recalcitrant". *Roberts v. S.S. Argentina,* 359 F.2d 430 (2d Cir. 1966); *cf. Jordan v. Norfolk Dredging Co.,* 223 F.Supp. 79 (E.D.Va.1963). Ordinarily the issue of callousness is for the jury,[2] whereas the amount to be awarded is better left to be determined by the court. Courts have, however, occasionally permitted the jury to fix the amount, *see, e. g., Blanchard v. Cheramie,* 485 F.2d 328, 331 (5th Cir. 1973).[3] Since the body determining the amount to be awarded is usually required to consider such technical matters as the relative difficulty of the case and the quality of preparation and advocacy involved, *Faraci v. Hickey-Freeman Co.,* 607 F.2d 1025, 1028 (2d Cir. 1979), a trial judge is better equipped by training and experience to determine a reasonable amount than is a jury inexperienced in such matters.

In the present case the necessity of bringing suit for recovery of adequate maintenance and the jury's award of $5,700 militate in favor of a finding that Incandela is entitled to reasonable counsel fees. Accordingly the case is remanded to the district court with directions to award to Incandela maintenance at the rate of $26.80 per day and a reasonable counsel fee to be fixed after such hearing as may be required. We have carefully examined the other issues raised by appellant and find them to be without merit.

The judgment of the district court is affirmed in part and reversed in part, in accordance with the foregoing.

2. While we are aware that several district courts have not followed this precept, *see Dixon v. Maritime Overseas Corp.,* 490 F.Supp. 1191, 1193 (S.D.N.Y.1980); *Hollingsworth v. Maritime Overseas Corp.,* 363 F.Supp. 1393, 1394 & n.1 (E.D.Pa.1972) (issue of jury's role raised but reserved); *Reed v. People-to-People Health Foundation, Inc.,* 336 F.Supp. 18, 19 (E.D.Pa.1972), in none of these cases was the issue of the jury's role in assessing the employer's behavior for the purpose of awarding counsel fees squarely faced.

3. A Fifth Circuit decision which seems to take the same tack as *Blanchard, Robinson v. Pocahontas, Inc.,* 447 F.2d 1048 (1st Cir. 1973), is distinguishable and inapplicable here. In *Robinson,* the trial court charged the jury that it could award counsel fees as an element of punitive damages. The jury awarded $10,000 for this purpose, and the award was upheld on appeal. In upholding the award, however, the First Circuit read *Vaughan* as authorizing punitive damages in excess of counsel fees, relying on language in Justice Stewart's dissent. Thus the *Robinson* court approved the jury's inherent power to assess punitive damages rather than endorse the jury's capacity to determine an appropriate counsel fees award. Since the First Circuit's reading of *Vaughan* has been squarely rejected by this Court, *Kraljic v. Berman Enterprises, Inc.,* 575 F.2d 412 (2d Cir. 1978), *Robinson* is not authority in the Second Circuit for the proposition that under *Vaughan* a jury should determine the counsel fees to be awarded in a maintenance and cure case.