Bohdan GAJEWSKI, Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. 79 Civ. 5198 (KTD).

United States District Court,
S. D. New York.

May 6, 1982.

Paul C. Matthews, New York City, for plaintiff.

J. Paul McGrath, Asst. Atty. Gen., Washington, D. C., John S. Martin, Jr., U. S. Atty., Torts Branch, Civ. Div., U. S. Dept. of Justice, New York City, for U. S.; Janis G. Schulmeisters, New York City, of counsel.

## OPINION

KEVIN THOMAS DUFFY, District Judge:

Bohdan Gajewski, a Polish immigrant who served as second assistant engineer on a public vessel of the United States, sues the United States for unearned wages, maintenance and cure, vacation pay, damages and attorney fees resulting from an

illness suffered during his service aboard the USNS Neches ("the Neches") in January, 1978. The government contests Mr. Gajewski's allegation that money is due and owing. A motion to dismiss by the defendant for lack of jurisdiction was made on the morning of trial. I reserved decision pending submission of papers on the jurisdictional issue by both sides after the trial. A two day non-jury trial was held before me on the merits of plaintiff's case on September 10th and 14th, 1981. The following shall constitute my findings of fact and conclusions of law.

## FACTS

Mr. Gajewski joined the crew of the Neches, owned by the U.S. Military Sealift Command and operated by Cove Shipping, Inc., on November 22, 1977 as second assistant engineer, after two prior occasions of service aboard this ship. The Neches was at sea on short passages from November 22, 1977 until January 4, 1978 when the ship landed at Beaumont, Texas. On January 14, 1978, the Neches left Texas on a voyage which ended April 20, 1978. En route, the ship docked in Norfolk, Virginia on January 19, 1978 where Mr. Gajewski departed.

The overtime records from January 5 through January 12, 1978 indicate that Mr. Gajewski worked one hundred and twenty-six hours during this eight day period. Defendant's Exhibit K. Although the exact number of hours actually logged is disputed, it is clear that substantial periods of overtime were worked. The port time in Beaumont was used to repair the disastrous condition of the ship. Dabrowski Deposition, at p. 24. Consequently, excessive overtime hours were required of the plaintiff and other crew members. During this period Mr. Gajewski's duties ranged from watch of the engine room to more strenuous activity such as repairing the fuel pump and air compressor. In the engine room, where Gajewski did most of his repair work there was no air conditioning and the temperature often reached 90 degrees.

On January 14, 1978, when the Neches left Texas, Mr. Gajewski's overtime hours decreased sharply. Plaintiff contends that this drop off resulted from ill health, whereas the government argues that the ship was purposely cutting down on overtime hours available to the crew members in order to curb expenses. Whatever the reasons may be for the decreased overtime, Mr. Gajewski rarely worked more than two hours overtime from January 14th until the ship landed in Norfolk on January 19, 1978.

Mr. Gajewski testified that shortly after the ship left Texas he began to experience pain in his chest "radiating to my left side, and I was short of breath on it. It was like a pressure, like somebody was squeezing me. And I was sweating." Trial Transcript at p. 22. Mr. Gajewski obtained a Master's Certificate, Defendant's Exhibit G, on January 18, 1978, allowing him to obtain free medical care at the Public Health Service Hospital in Norfolk. The certificate states that the plaintiff was "*not* taken ill or injured while employed."; however, it is undisputed that Mr. Gajewski went straight from the ship to the Norfolk Hospital.

The doctors placed Mr. Gajewski in the intensive care unit for three days to monitor his heart. He was subjected to a myriad of tests and medications. During his hospitalization, the doctors detected a pulmonary embolism after an abnormal electrocardiogram was taken on January 25. This diagnosis resulted in more extensive tests and medication, and further prolonged Mr. Gajewski's hospital stay. The plaintiff remained as an inpatient at Norfolk Hospital until February 17, 1978 when he was released although he was not yet fit to resume duty. The hospital told him to return on March 10, 1978 if he had not secured private care elsewhere. Plaintiff's Exhibit 1. Gajewski immediately left for New Jersey, where he became the patient of Dr. Schwimmer, an internist. Mr. Gajewski remained under Dr. Schwimmer's care from February 21, 1978 until July 10 of that year when he was declared fit to resume duty. Plaintiff's Exhibit 2.

This lawsuit ensued from the plaintiff's unsuccessful attempts to recover from the United States Government unearned wages,

maintenance and cure, and damages incurred during his illness.

Robert Silance, an employee of Cove Shipping, testified that the plaintiff visited his offices in February, 1978 in New York City and at that time he was paid a $500 advance on unearned wages. Unearned wages of $1,412.82 were paid to Mr. Gajewski when he reported to Cove Shipping, Inc. in July his change to active duty status. This amount only covered the period of Mr. Gajewski's hospitalization, January 19, through February 17, and was based on a forty hour work week with no allowance for overtime. Mr. Gajewski also received a $1,049.89 net payment of owed vacation pay for the same period. These are the only payments received by the plaintiff.

This lawsuit was initiated to recover unearned wages, overtime, and vacation pay through April 20, 1978, when the Neches' voyage which started on December 3, 1977 officially ended, and maintenance and cure from that time until July 10, 1978 when Gajewski was returned to active duty status.

## DISCUSSION

### I. *Jurisdiction*

The first issue to be resolved in this case is whether the plaintiff properly obtained personal jurisdiction over the government. It is the government's contention that no jurisdiction exists because it was not properly served. The summons and complaint were filed in this case on September 28, 1979. Copies of the summons and complaint were forwarded to the office of the United States Marshal ("Marshal") for service on the defendant on October 16, 1979. Court Exhibit A. It appears that the plaintiff's papers were misplaced and service on either the Attorney General or the United States Attorney was not effected until January 27, 1980 after plaintiff's counsel filed a

supplemental summons and resubmitted copies to the Marshal's office for service.

■ Defendant contends that the eighteen day delay between the filing of the summons and complaint and delivery to the Marshal runs afoul of 46 U.S.C. § 742 and mandates dismissal of plaintiff's action. Section 742 states in pertinent part that in admiralty suits brought against the United States:

The libelant shall *forthwith* serve a copy of his libel on the United States attorney for such district and mail a copy thereof by registered mail to the Attorney General of the United States, and shall file a sworn return of such service and mailing.

46 U.S.C. § 742 (emphasis added). Defendant vigorously argues that eighteen days is outside the jurisdictional definition of "forthwith." Although numerous cases are cited in support of this proposition, all of these cases involved delays of longer than eighteen days. Section 742 ensures that both the United States Attorney and the Attorney General are quickly apprised of pending actions, *Battaglia v. United States*, 303 F.2d 683 (2d Cir.), *cert. dismissed*, 371 U.S. 907, 83 S.Ct. 210, 9 L.Ed.2d 168 (1962). No hard and fast rule, however, has ever been laid down defining "forthwith" for the purposes of this statute. "Forthwith" has been interpreted to mean "immediately, without delay, or as soon as the object may be accomplished by reasonable exertion." *City of New York v. McAllister Brothers, Inc.*, 278 F.2d 708, 710 (2d Cir. 1960). Under the circumstances of this case, the eighteen day delay was reasonable and within the meaning of "forthwith." As a result, the complaint is not vulnerable to dismissal on jurisdictional grounds.[1] Defendant's failure to raise this argument until the morning of trial, well over a year after receipt of the summons and complaint further militates against dismissal. Accord-

---

1. Defendant argues that Court Exhibit A only requests that the United States of America be served and not the Attorney General, as Section 742 requires. However, Defendant's Exhibit EE, the return of service by the Marshal's office, also listed only the United States as a party to be served but the Attorney General was indeed served. Defendant cannot thus argue that the Attorney General would not have been served save the Marshal's misplacement of plaintiff's papers.

ingly, the government's motion to dismiss is denied and I will now address the merits of plaintiff's claims.

## II. *Jones Act and Unseaworthiness*

Mr. Gajewski contends that the negligence of the shipowner in violation of the Jones Act, combined with the unseaworthiness of the Neches entitle him to damages measured by his unearned wages from the day he left the vessel on January 19 until April 20, the day that particular voyage ended. Although Mr. Gajewski did receive base pay through February 17, the day he was discharged from the Norfolk hospital, the plaintiff argues that he is owed overtime pay through February 17 plus both overtime and base pay through April 20. The defendant in turn responds that the Neches was seaworthy, that Mr. Gajewski's overtime was excessive, unrelated to his illness and impossible to predict and that Mr. Gajewski's illness was not due to its negligence.

■ While the circumstances, nature and cause of Mr. Gajewski's illness remain an enigma to this court, it is agreed that the plaintiff left the Neches on January 19 and was immediately hospitalized for one month. It is also undisputed that Mr. Gajewski worked substantial hours of overtime prior to his illness. The Jones Act, codified at 46 U.S.C. § 688, entitles a seaman to recover damages for personal injuries suffered in the course of employment. A shipowner will be negligent under the Jones Act if it violates 46 U.S.C. § 673 which provides in pertinent part:

> ... nor shall any licensed officer or seaman in the deck or engine department be required to work more than eight hours in one day; but these provisions shall not limit either the authority of the master or other officer or the obedience of the seamen when in the judgment of the master or other officer the whole or any part of

the crew are needed for maneuvering, shifting berth, mooring, or unmooring, the vessel or the performance of work necessary for the safety of the vessel, her passengers, crew, and cargo, or for the saving of life aboard other vessels in jeopardy, or when in port or at sea, from requiring the whole or any part of the crew to participate in the performance of fire, lifeboat, or other drills. ... And at all times while such vessel is in a safe harbor, eight hours, inclusive of the anchor watch, shall constitute a day's work. Whenever the master of any vessel shall fail to comply with this section and the regulation issued thereunder, the owner shall be liable to a penalty not to exceed $500, and the seamen shall be entitled to discharge from such vessel and to receive the wages earned. ...

46 U.S.C. § 673. The excessive hours tolled by Mr. Gajewski aboard the Neches constitute a patent violation of the Jones Act and subjects the defendant to liability for damages arising from this violation.[2] *See Wilkins v. American Export Isbrandtsen Lines, Inc.,* 446 F.2d 480 (2d Cir. 1971), *cert. denied,* 404 U.S. 1018, 92 S.Ct. 679, 30 L.Ed.2d 665 (1972).

Having proven defendant's violation of the Jones Act, plaintiff urges that I automatically presume that defendant's acts were the proximate cause of plaintiff's illness. *See The Pennsylvania,* 86 U.S. 125, 136, 22 L.Ed. 148 (1874). Such a harsh rule need not be applied in this case because a "justifiable inference" of causation arises from the evidence presented. *Wilkins, supra,* 446 F.2d at 484. Mr. Gajewski worked long hours until the Neches left Beaumont and then his condition steadily deteriorated until the ship docked at Norfolk. Defendant's expert witness, Dr. Bloomfield, testified with certainty that the pulmonary embolism which developed during Gajewski's hospitalization was not due to strenuous

**2.** The overtime hours actually worked in addition to Mr. Gajewski's eight hour day are disputed, but the records indicate that he logged 153 overtime hours between January 1 and January 15. Defendant's Exhibit K. Even if this court accepts the testimony of First Assist-

ant Engineer Dabrowski that Mr. Gajewski was paid for two hours of overtime per day which was not earned, Defendant's Exhibit CC, at p. 28, then thirty hours is deducted from the total and Mr. Gajewski still worked 123 overtime hours.

working conditions, but he was unable to ascertain the etiology of the plaintiff's original symptomatology. Trial Transcript at p. 53, 60.

Mr. Gajewski has proven by a preponderance of the evidence that the defendant's negligence prompted his illness. Dr. Schwimmer, the plaintiff's expert, testified at his deposition that the illness resulting in Gajewski's hospitalization was due to either a cardiospasm or anxiety which likely resulted from the plaintiff's working conditions aboard the Neches. Schwimmer Deposition at p. 40. The defendant's argument that the lion's share of overtime worked by the plaintiff was before January 14, when the Neches left Beaumont, and that Mr. Gajewski did not seek medical attention in Beaumont is not persuasive.

 Plaintiff has established a breach of defendant's statutory duty and a causal connection between that breach and Gajewski's illness. Negligence under the Jones Act is to be "liberally construed in order to accomplish its beneficent purposes." M. Norris, The Law of Seamen, § 662 (3d ed. 1970). See Castro v. Moore-McCormack Lines, Inc., 325 F.2d 72, 75 (2d Cir. 1963). There is ample evidence in the record to support the conclusion that plaintiff's illness resulted from defendant's negligence. Plaintiff need not show, as the government insists, that the defendant's acts were the sole cause of the plaintiff's disability. Milos v. Sea-Land Service, Inc., 478 F.Supp. 1019, 1023 (S.D.N.Y.1979), aff'd, 622 F.2d 574 (2d Cir.), cert. denied, 449 U.S. 954, 101 S.Ct. 360, 66 L.Ed.2d 219 (1980). Mr. Gajewski has proven that the ship's condition required overtime hours, that his overtime was condoned and approved by the operators of the ship, and that his illness arose after the overtime hours were worked. Defendant's liability under the Jones Act is thus established.[3]

 Plaintiff's monetary recovery from the defendant here is not affected by Gajewski's own negligence that may have contributed to his illness. "Contributory negligence and assumption of the risk are not defenses which bar recovery by a seaman in a Jones Act case. Rather, a comparative negligence standard applies." Johannessen v. Gulf Trading & Transportation Co., 633 F.2d 653, 655 (2d Cir. 1980) (citations omitted). Accord Fitzgerald v. United States Lines Co., 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963). Here, no proof was submitted of any possible negligence by Mr. Gajewski. He stopped working overtime soon after he began experiencing pain in his chest and he reported to the hospital at the soonest available opportunity. I see no reason to decrease his award based on the highly tenuous theory concocted by the defendant that a medicine, which was never firmly identified or related to Mr. Gajewski's illness, was supposedly found on his person at the hospital. I refuse to infer that plaintiff was aware of his precarious physical state before he joined the Neches' crew.

 The issue remaining is the exact determination of wages owed to Mr. Gajewski. The voyage in question ended April 20th yet Mr. Gajewski only received wages through February 17. Mr. Gajewski is "entitled to be paid wages until the end of the voyage on which the injury was incurred." Catrakis v. Nautilus Petroleum Carriers Corp., 427 F.Supp. 255, 259 (S.D.N.Y.1977). He is not entitled, however, to any overtime pay for the voyage. It is inconsistent for plaintiff to contend on the one hand that overtime violates the Jones Act and on the other hand that overtime is due and owing as an integral part of Gajewski's duties. Accordingly, Mr. Gajewski is entitled to base pay wages from February 17 until April 20.

 Mr. Gajewski also requests vacation pay for the same period of time at a daily rate of $53. This money would be forthcoming if Cove Shipping, Inc. had continued to contribute to Mr. Gajewski's account.

---

**3.** A finding that the defendant is liable under the Jones Act obviates the need to consider plaintiff's unseaworthiness claim. *Cheuvront*

*v. Pittsburgh & Lake Erie Railroad Co.*, 477 F.Supp. 193, 197 (W.D.Pa.1979).

Their failure to do so is not sufficient reason to deprive the plaintiff of owed benefits. If wages are owing through the end of the voyage, then so must vacation pay be owing. Mr. Gajewski is thus awarded his requested vacation pay.[4]

### III. *Maintenance and Cure*

██ Mr. Gajewski sues the government for maintenance and cure from the time he was released from the hospital until he was fit for duty on July 10, 1978. It is well settled that a seaman is entitled to maintenance and cure for any injuries suffered in the course of his voyage which renders him unfit for duty. *Catrakis, supra*, 427 F.Supp. at 259. This time honored seamen's right to maintenance and cure was recently restated by the Supreme Court:

> The shipowner's ancient duty to provide maintenance and cure for the seaman who becomes ill or is injured while in the service of the ship derives from the "unique hazards [which] attend the work of seamen," and fosters the "combined object of encouraging marine commerce and assuring the well-being of seamen." ... [T]he breadth and inclusiveness of the shipowner's duty assure its easy and ready administration for "[i]t has few exceptions or conditions to stir contentions, cause delays and, invite litigations."

*Vella v. Ford Motor Co.*, 421 U.S. 1, 3–4, 95 S.Ct. 1381, 1382–1383, 43 L.Ed.2d 682 (1975), *quoting from Aguilar v. Standard Oil Co.*, 318 U.S. 724, 727, 63 S.Ct. 930, 932, 87 L.Ed. 1107 (1943). In order to recover maintenance, Mr. Gajewski need only show that the "illness manifest itself during service."

M. Norris, *The Law of Seamen*, § 545 (3d ed. 1970), *citing Roberts v. The S.S. Argentina*, 359 F.2d 430 (2d Cir. 1966). Negligence or fault of either the shipowner, seamen or master is immaterial to a maintenance award. "Recovery of maintenance and cure by the seamen sick or injured in the service of the vessel absent willful misbehavior is a virtual certainty." Norris, *supra*, § 551. *See Vandinter v. American Steamship Co.*, 387 F.Supp. 989, 990 (W.D. N.Y.1975). No evidence of misconduct "such as willful disobedience of orders or intoxication" *id.*, which would excuse the payment of maintenance, was adduced at trial. Mr. Gajewski has proven that his illness arose during his service on the Neches, the question remaining is not whether maintenance and cure is appropriate, but rather the amount of the maintenance and cure award.[5]

██ Plaintiff's union contract provides in relevant part:

> When an Engineer is under legitimate out-patient treatment it is agreed that in adjusting maintenance and cure, the Company will compensate the man concerned at the rate of $8.00 per day, to be paid weekly. Maintenance and Cure shall not be withheld in any case merely because a claimant has also submitted a claim for damages or has filed suit therefor or is taking steps to that end.

Art.VI, Section 12(A), Plaintiff's Exhibit 5. The eight dollar fixed rate in the union contract has been followed by the courts "since at least the early 1950's ... regardless of the gradual erosion of the purchasing power which the amount represented."

---

**4.** Mr. Gajewski is not entitled to reimbursement for his doctor's bills. His private medical expenses in New York were neither incurred in an emergency nor resulted from a misdiagnosis in a metropolitan public health hospital.

A seaman generally does not have a free hand in choosing where to go for medical treatment. This is true because the United States Public Health Service maintains marine hospitals at which a seaman may obtain free medical care. [citation omitted] An injured seaman who is issued a hospital ticket to the nearest marine hospital by his vessel usually must accept the medical service available to him in that hospital and will not be reimbursed for the cost of private medical treatment which he seeks on his own. *Keiser v. American President Lines, Ltd.*, 384 F.Supp. 554, 556 (S.D.N.Y.1974).

**5.** The law is clear that the award of maintenance and cure and wages cannot overlap to allow double recovery. *Bartholomew v. Universe Tankships, Inc.*, 279 F.2d 911, 913 (2d Cir. 1960). Mr. Gajewski's maintenance award must therefore begin on April 21, 1978, the day after his last unearned wage payment.

*Incandela v. American Dredging Co.*, 659 F.2d 11, 14 (2d Cir. 1981). The *Incandela* court, however, rejected the rigid monetary figure and increased a daily maintenance award to $26.50 per day to reflect the seamen's actual living expenses. The injured plaintiff in *Incandela* presented a *prima facie* case to support this higher maintenance rate. Mr. Gajewski, by contrast, has presented no evidence documenting his expenses from the time he was discharged from the Norfolk Hospital until July 10. The proof showed that Mr. Gajewski was living in New Jersey and seeing a private physician in New York City. I certainly appreciate in these inflationary times how difficult it is to support one's self on eight dollars a day. However, absent any evidence upon which to base an increased maintenance award, I am constrained to adhere to the plaintiff's union contract and award eight dollars a day as the maximum daily rate recoverable. *See Dixon v. Maritime Overseas Corp.*, 490 F.Supp. 1191, 1193 (S.D.N.Y.), *aff'd*, 646 F.2d 560 (2d Cir. 1980), *cert. denied*, 454 U.S. 838, 102 S.Ct. 145, 70 L.Ed.2d 120 (1981).

### IV. *Attorney's Fees*

 Attorney's fees are appropriately awarded in a maintenance case when the shipowner callously or recalcitrantly withholds money owed. *Vaughan v. Atkinson*, 369 U.S. 527, 531, 82 S.Ct. 997, 999, 8 L.Ed.2d 88; *Incandela, supra*, at 15; *Dixon, supra*, at 1193. Mr. Silance's testimony establishes that no unearned wages were paid until July, 1978, five months after plaintiff's hospital release. Furthermore, no maintenance has been forthcoming. This establishes sufficient callousness to justify an award of attorney's fees.

### V. *Conclusion*

Mr. Gajewski has established the liability of the United States under the Jones Act and as a result he is entitled to recover unearned wages and vacation pay from February 17 through April 20, 1977 inclusive, or 63 days. Applying his daily pay rate of $48.718, Defendant's Exhibit I, defendant owes Mr. Gajewski $3,069.23 in unearned wages and $3,339.00 in vacation pay. Added on to this recovery is maintenance calculated at a rate of eight dollars per day for 81 days or $648.00. The total amount of the award is $7,056.23.

Plaintiff is ordered to submit affidavits accounting for attorney's fees. Settle judgment on the underlying claims with 10 days' notice.