Joe Lee GROVE

v.

DIXIE CARRIERS, INC.

Civ. A. No. 82–2524.

United States District Court, E.D. Louisiana.

Dec. 17, 1982.

---

Charles F. Gay, New Orleans, La., for plaintiff.

Miles P. Clements, New Orleans, La., for defendant.

## OPINION AND ORDER

McNAMARA, District Judge.

This case arises out of personal injuries allegedly sustained by Plaintiff, Joe Lee Grove, on or about January 2, 1982, while working as a tankerman aboard the DIXIE PIRATE, a vessel owned and operated by his employer, Dixie Carriers, Inc. (Dixie). Plaintiff filed suit against Dixie under the Jones Act for negligence and the General Maritime Law for maintenance and cure.

Plaintiff's employer, Dixie, began maintenance payments subsequent to the Plaintiff's accident at the rate of $8.00 per day, in accordance with its contract with the Seafarers International Union of North America (SIU), of which Plaintiff was a member. Plaintiff then filed a motion for increase in maintenance payments, seeking an increase in the rate of maintenance paid to $20.00 per day. Because determination of the proper amount of maintenance payments is a factual question, to be decided on evidence presented to the Trial Court, *Tate v. American Tugs, Inc.,* 634 F.2d 869 (5th Cir.1981), Plaintiff's motion was denied, the maintenance claim severed by the Court and an evidentiary hearing held on the issue of "maintenance."

At the hearing, evidence was presented by the Plaintiff to reflect the actual costs incurred in obtaining food and lodging in his local community comparable to the quality of that provided aboard the vessel. Defendant, Dixie, takes the position that Plaintiff is only entitled to the $8.00 per day rate of maintenance set forth in the Union contract which, the Defendant claims, is binding on the Plaintiff as a member of that Union.

SIU, on behalf of its Union members, entered into a collective bargaining agree-

ment with Dixie on May 27, 1980, whereby the Union agreed to furnish Dixie with personnel at various skill levels for employment aboard vessels owned and/or operated by Dixie. The effective dates of the agreement are April 1, 1980, through March 31, 1983, and it is undisputed that the Union contract was in full force and effect during the entire term of Plaintiff's employment with Dixie.

The agreement, entitled "UNLICENSED AGREEMENT BETWEEN THE SEAFARERS INTERNATIONAL UNION OF NORTH AMERICA ATLANTIC, GULF, LAKES AND INLAND WATERS DISTRICT AFL–CIO AND DIXIE CARRIERS, INC." expressly provides in Article V, Section 14:

> "When an employee is entitled to maintenance and cure under Maritime Law, he shall be paid maintenance at the rate of eight dollars ($8.00) per day for each day or part thereof. The payments due hereunder shall be paid to the employee weekly. This payment shall be made regardless of whether the employee has or has not retained an attorney, filed a claim for damages, or taken any other steps to that end, and irrespective of any insurance arrangements in effect between the Company and insurer."

It is not disputed that tankermen (the position in which Plaintiff was employed) are unlicensed personnel within the terms of the collective bargaining agreement.

The testimony at the hearing reflects that Dixie was operating as a "closed" shop. That is, Dixie, pursuant to its agreement with SIU, agreed to hire only union employees.[1] Hence, in accordance with this agreement, and at the Union's request, all persons who solicited employment with Dixie were required to join the Union, as a condition of employment. In the present case, the Plaintiff, in anticipation of employment with Dixie, executed a Check-Off Authorization on December 22, 1981, indicating his desire to become a member of SIU and authorizing Dixie to deduct the initiation fees and membership dues of the Union from his wages. Testimony at the hearing further indicated that Plaintiff was given a copy of the agreement between Dixie and SIU, by the captain of the vessel upon which he worked, when he began his employment with Dixie. Thus, the uncontradicted evidence establishes that the Plaintiff voluntarily joined the Union (SIU) in order to obtain employment with Dixie.

Before the Court may consider evidence to determine the proper amount of maintenance to be paid the Plaintiff, it must first address the issue of whether the Plaintiff, as a member of the Seamen's Union, is bound by the rate of maintenance set forth in the collective bargaining agreement entered into between his employer, Dixie Carriers, and SIU, the Union by which Plaintiff was represented. If the Plaintiff is bound, as a matter of law, by the contractual rate of maintenance set forth in the Union contract, the Court need not consider additional evidence on the maintenance issue.[2]

The question of the binding effect of a Union contract upon the rate of maintenance and cure is one of first instance in this Circuit. Maintenance and cure are centuries old remedies under the General Maritime Law. A seaman's right to maintenance is implicit in and arises out of the

---

1. Article I, Section 2, of the Collective Bargaining agreement provides in pertinent part: "The Union agrees to furnish the Company with capable, competent and physically fit persons, when and where they are required to fill vacancies necessitating the employment of employees covered hereunder, in ample time to prevent any delay in the scheduled departure of any vessel covered by this Agreement. To assure maximum harmonious relations, and in order to obtain the best qualified employees with the least risk of a delay in the scheduled departure of any vessel covered by this Agreement, the Company agrees to secure all its personnel through the hiring halls of the Union."

2. By stipulation of the parties, the defendant has agreed to pay maintenance at the rate fixed by the Court, reserving, however, the right to later challenge Plaintiff's entitlement to maintenance and cure. Thus, the sole question presently before this Court is not whether maintenance is owed but rather the rate at which maintenance is to be paid.

contractual relationship between the seaman and his employer, and is designed to ensure his recovery upon injury or illness sustained in the service of the ship. *Pellotto v. L & N Towing Co.,* 604 F.2d 396 (5th Cir.1979) and cases cited therein. A seaman who is injured or falls ill while he is in the service of the ship is entitled to recover maintenance from his employer or the ship owner. Maintenance is intended to cover the reasonable costs the seaman incurs in acquiring food and lodging ashore until he reaches maximum cure. Maintenance payments are designed to provide subsistence to the injured seaman and not to compensate the seaman for any specific injury or damage; thus, the rate at which maintenance is to be paid ordinarily reflects the cost of food and lodging in a particular area, comparable to that received on board the vessel. *Tate v. American Tugs, Inc.,* supra; *Caulfield v. A.C. & D. Marine, Inc.,* 633 F.2d 1129 (5th Cir.1981); *Robinson v. Plimsoll Marine, Inc.,* 460 F.Supp. 949 (E.D. La.1978).

 However, where the seaman, through the Union as his representative, expressly contracts with his employer for a specific rate of maintenance, whether it be higher or lower than it would otherwise be, the contract between the seaman and his employer establishes, as a matter of law, the rate of maintenance to be paid. This Court recognizes that while the duty to provide maintenance has its source in a relation which is contractual in its origin, this duty, nonetheless, may *not* be abrogated by agreement of the parties. Enforcing such a contractual provision would fly in the face of the liberal attitude long accorded seamen by the Courts in awarding maintenance and cure. *Vaughan v. Atkinson,* 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962), citing *Cortes v. Baltimore Insular Line,* 287 U.S. 367, 53 S.Ct. 173, 77 L.Ed. 368 (1932). However, in the absence of a similar policy reason invalidating the provision in the collective bargaining agreement

which fixes the *rate* of maintenance, the contractual provision must be enforced as the law between the parties. *Armco Steel Corp. v. N.L.R.B.,* 344 F.2d 621 (6th Cir. 1965), citing *N.L.R.B. v. Wooster Division of Borg-Warner Corp.,* 356 U.S. 342, 78 S.Ct. 718, 2 L.Ed.2d 823 (1958), *Medo Photo Supply Corp. v. N.L.R.B.,* 321 U.S. 678, 64 S.Ct. 830, 88 L.Ed. 1007 (1944), *N.L.R.B. v. Industrial Rayon Corp.,* 297 F.2d 62 (6th Cir.1961). The Court acknowledges that there is some point of reasonableness which cannot be exceeded in setting the contractual rate of maintenance and which would be tantamount to abrogating the obligation to pay maintenance and cure entirely. However, it certainly cannot be said that a rate of $8.00 per day for maintenance, which has been the standard rate in this Circuit for a substantial number of years and from which the Courts have only recently departed, in any way violates this standard of reasonableness.

Nor can there be asserted an argument of unequal bargaining position between the parties. On the contrary, there is every indication that the rate of maintenance in the collective bargaining agreement was freely negotiated between the Union, as representative of its members, and the employer.[3] The rate of maintenance is but one of many elements contained within the Union contract and over which the parties negotiate, and there may be a considerable amount of "give and take" exercised by the parties in coming to a final agreement on all of the elements. For example, the typical Union contract, as the one in the present case, provides for a certain wage scale with concomitant cost of living raises and provisions for overtime, reimbursement for transportation expenses related to employment, as well as other pecuniary and nonpecuniary employment related benefits. This Court is reluctant to give full force and effect to certain provisions contained in the collective bargaining agreement and yet, at the same time, fail to enforce another.

**3.** Nor have there been any allegations made by the Plaintiff that he was inadequately represented by the Union.

It must be noted that this Court's decision today is not inconsistent with the increasingly wide range of maintenance rates awarded in other cases, including some in this District, which have awarded increased amounts of maintenance in accordance with the seaman's estimated daily living expenses ashore. (See e.g., *Robinson v. Plimsoll Marine, Inc.,* supra, where the Court departed from the "recognized rate" of $8.00 per day and awarded Plaintiff $15.00 per day based primarily on evidence of the effects of inflation on the cost of food and lodging.) This Court concedes that *in the absence of a Union contract* expressly providing for a specific rate of maintenance, the amount of maintenance to which an ill or injured seaman is entitled is a question of fact to be determined by the Trial Court based upon the evidence presented, including evidence as to the costs the seaman incurs in acquiring food and lodging prior to reaching maximum cure. *Tate v. American Tugs, Inc.,* supra; *Caulfield v. A.C. & D. Marine, Inc.,* supra; *Robinson v. Plimsoll,* supra. However, if there exists a valid collective bargaining agreement between the seaman's Union and his employer, which expressly sets forth the rate of maintenance to be paid a seaman employee should he become ill or injured, then the Plaintiff, as a party to that agreement, will be bound by its terms.

In *Reardon v. California Tanker Co.,* 260 F.2d 369 (2nd Cir.1958), cert. denied 359 U.S. 926, 79 S.Ct. 609, 3 L.Ed.2d 628 (1958), the Second Circuit recognized the contractual nature of the seaman's claim for maintenance and distinguished the separate and independent right the seaman may have under the theory of negligence chargeable to his employer or from unseaworthiness of the vessel. The Court on rehearing *en banc* reversed its original panel decision and affirmed the District Court's refusal to allow the Defendants to introduce at trial evidence of maintenance and cure payments made by the employer pursuant to a collective bargaining agreement with the seaman's Union. The Trial Court excluded the evidence as being immaterial to the amount of damages recoverable by the seaman under his Jones Act or unseaworthiness claim, the latter of which were the sole issues before the Court. The Court adopted the dissenting opinion of Judge Medina, a member of the original panel, wherein it was stated at page 374:

"Since the appellee (Plaintiff) was entitled, under the Union contract, to the maintenance and cure payments, I turn to another possible ground for reversal. The appellant (Defendant) contends that those payments, plus the amount awarded the appellee (Plaintiff) by the jury, constituted a 'double recovery.' In my opinion, however, they did not amount to excessive compensation because the verdict did not include recovery for board and lodging and there was no claim submitted by the appellee (Plaintiff) for medical expenses. *If the appellee (Plaintiff) actually spent more than $576.00 for expenses within the category of maintenance and cure, he would have no claim against the ship owner for this excess because of the rate fixed by the contract. Likewise, if he spent less than this amount, the ship owner cannot be heard to claim a 'rebate' after having agreed to the rate in the contract."* Id. (Emphasis supplied.)

Thus, the Court held that "the amount of $8.00 per day for this item fixed in the collective bargaining agreement was a fair and proper pre-estimate which neither party could repudiate. Hence, the Defendant could not be heard to say that when it paid Plaintiff the agreed upon amount it had overpaid him." Id. at Pg. 376. Likewise, the Plaintiff in the present case, Joe Lee Grove, cannot be heard to say that when he receives the agreed upon amount he has been underpaid.[4]

---

**4.** This Court recognizes that the emphasized language in *Reardon,* as to the Plaintiff's inability to recover any expenses incurred in excess of the Union contract rate, may be considered dicta. Nevertheless, it is an acknowledgement of the enforceability of Union contracts with regard to maintenance.

The Fifth Circuit has similarly recognized the effect of an explicit contractual provision upon the employer's maintenance obligation. In *Morel v. Sabine Towing & Transportation Co., Inc.,* 669 F.2d 345 (5th Cir.1982), the Court was faced with the issue of whether maintenance is due for days of cure occurring during a vacation period. The Court, distinguished a seaman's right to receive maintenance upon illness or injury from his entitlement to wages, holding that in the absence of an explicit contractual provision to the contrary, accumulated leave time (paid vacation) is merely a method of deferred wage payment and constitutes earned wages, separate and distinct from maintenance, citing *Shaw v. Ohio River Co.,* 526 F.2d 193 (3rd Cir.1975). *Morel* did not address the validity of such a contractual agreement since that issue was not directly before the Court. However, in reaching its conclusion, the Court took cognizance of the decisions in *Shaw* and the cases cited therein, particularly *German v. Carnegie-Illinois Steel Corp.,* 169 F.2d 715 (3rd Cir.1948) and, *Thomas v. Humble Oil & Refining Co.,* 420 F.2d 793 (4th Cir.1970).

Of particular note is the *Thomas* case, wherein the Fourth Circuit upheld a provision of the collective bargaining agreement between the association representing the seaman and the employer, which provided that an injured seaman would receive disability benefits in lieu of maintenance payments. The disability benefits were structured so that the injured seaman would receive an amount equal to the otherwise applicable $8.00 rate of maintenance. Thus, the Fifth Circuit, in taking cognizance of these decisions of other Circuits, has given credence to collective bargaining agreements which effect the employer's duty to pay maintenance, leaving open only the question of the validity of the particular provision in question.

The Plaintiff's major contention has been that a seaman is not bound by the rate of maintenance provided for in the Union contract, but that a Union contract is only one source of probative evidence to be used in determining the proper rate of mainte-

nance. However, in each of the cases cited by the Plaintiff in support of this proposition, without exception, the seaman was *not* a member of the contracting Union and, therefore, not a party to the collective bargaining agreement, as in the present case. This Court, after extensive research, has been unable to find any case where the Courts have departed from the rate of maintenance specified in the Union contract, where the seaman was a member of that Union. On the Contrary, in those reported decisions which the Court has reviewed, involving a dispute over maintenance and cure where the seaman was a member of a Union and a collective bargaining agreement was in full force and effect, the Courts have invariably adhered to the maintenance rate set forth in the Union Contract. *Almeida v. U.S.,* No. 79–5196 (S.D.N.Y. June 16, 1982); *Gajewski v. U.S.,* 540 F.Supp. 381 (S.D.N.Y.1982); *Williams v. Barge Foss 253,* 528 F.Supp. 226 (W.D.Wash.1981); *Dixon v. Maritime Overseas Corp.,* 490 F.Supp. 1191 (S.D.N.Y.1980); aff'd., 696 F.2d 560 (2nd Cir.1980), cert. denied, 454 U.S. 838, 102 S.Ct. 145, 70 L.Ed.2d 120 (1981); *Tague v. American President Lines, Ltd.,* 1975 AMC 1129 (N.D. Cal.1975); *Bailey v. Moore-McCormack Lines, Inc.,* 280 F.Supp. 310 (S.D.N.Y.1967); *Covert v. Centennial Queen,* 185 F.Supp. 552 (D.Or.1960); *Fuentes v. Panama Canal Co.,* 146 F.Supp. 303 (S.D.N.Y.1956); *Keefe v. American Pac. S.S. Co.,* 110 F.Supp. 853 (S.D.Cal.1953); *Logue v. United States, et al.,* 85 F.Supp. 805 (S.D.N.Y.1949). Thus, the Court is not persuaded by Plaintiff's argument. As stated earlier, it is only in the absence of a binding Union contract that additional evidence of the costs of food and lodging may be considered in determining the proper amount of maintenance to be awarded. And it is in those cases that the Court may take judicial notice of Union contracts in the area, as one item of evidence to be considered in fixing an appropriate maintenance rate.

Accordingly, this Court finds that the Plaintiff, Joe Lee Grove, as a member of the Seafarers International Union of North

America, is bound by the maintenance rate of $8.00 per day, as specified in the collective bargaining agreement entered into between his employer, Dixie Carriers, Inc., and the Union, and therefore, is not entitled to recover those maintenance expenses incurred in excess of the Union contract rate.