Robert W. **RUTHERFORD**, Plaintiff,

v.

**SEA–LAND SERVICE, INC.**, a corporation, Defendant.

No. C–83–1433 RPA.

United States District Court,
N.D. California.

Nov. 21, 1983.

---

Eugene A. Brodsky, Jarvis, Miller, Brodsky & Baskin, San Francisco, Cal., for plaintiff.

Sam D. Delich, Graham & James, San Francisco, Cal., for defendant.

## OPINION AND ORDER

AGUILAR, District Judge.

■ This action is before the Court on defendant shipowner's motion to dismiss or for summary judgment. Plaintiff is a merchant seaman and a member of the International Seafarers' Union. Plaintiff's union has a collective bargaining agreement with defendant shipowner. One provision of the collective bargaining agreement limits defendant shipowner's duty of maintenance to $8.00 per day. Plaintiff has brought this action against defendant shipowner seeking a sum greater than $8.00 per day in maintenance. Plaintiff contends that $8.00 per day is an unreasonably low rate of maintenance. Defendant responds that plaintiff is absolutely bound by the terms of the collective bargaining agreement. On this basis, defendant moves to dismiss plaintiff's complaint, or in the alternative for summary judgment.[1]

The sole question before the Court at this time is whether a collectively bargained daily rate of maintenance is absolutely binding upon ill or injured union members, without regard to the reasonableness or adequacy of the daily rate of maintenance.

Plaintiff is a merchant seaman and an active member of the International Seafarers' Union. On March 20, 1982, plaintiff was injured when he was beaten up by a

---

1. The Court has recently received defendant's request that this Court hold in abeyance its ruling on defendant's motion until such time as the parties can submit further briefing. The Court hereby denies that request. The Court believes that the matter has been adequately briefed, and the Court feels confident that it has read all the relevant authorities. Further briefing would serve no purpose other than delay.

fellow crew member. At the time of his injury, plaintiff was the chief steward of the M/V Voyager, a freight vessel owned by defendant, which was temporarily docked in Long Beach.

Plaintiff received initial medical treatment in a hospital in Long Beach, and was then told to obtain further treatment in the San Francisco Bay Area. Plaintiff apparently has his home in the Bay Area. Plaintiff has since recovered from his physical injuries, but claims that he still suffers emotional trauma from the beating. Plaintiff asserts that he remains unfit for duty as a seaman.

As will be discussed in greater detail, *infra,* a seaman who is injured while in the service of a ship is entitled to "maintenance and cure" from the shipowner. Maintenance and cure is the food, lodging and medical care required by the seaman until he reaches the point of maximum medical recovery.

Plaintiff's union, the International Seafarers' Union, has a collective bargaining agreement with defendant shipowner. The collective bargaining agreement set the rate of maintenance payments at $8.00 per day. The applicable provision of the collective bargaining agreement provides:

> When a member of the unlicensed personnel is entitled to maintenance and cure under maritime law, he shall be paid maintenance and cure at a rate of Eight Dollars ($8.00) per day for each day or part thereof of entitlement. The payment due hereunder shall be paid to the man weekly. This payment shall be made regardless of whether he has or has not retained an attorney, filed a claim for damages, or taken any other steps to that end and irrespective of any insurance agreements in effect between the Company and any insurer.

Article II, Section 13, New Standard Freightship/Passenger Agreement, June 16, 1981—June 15, 1984.

Plaintiff accepted the $8.00 per day maintenance payments from defendant for approximately three months. Plaintiff thereafter refused to accept maintenance payments at this daily rate because defendant conditioned the payments upon plaintiff's waiver of any ultimate recovery of a greater daily maintenance payment.

On March 25, 1983, Plaintiff filed this action for maintenance against defendant. Plaintiff asks the Court to declare that the collective bargaining agreement limiting maintenance to $8.00 per day is unreasonable and unenforceable under general maritime law. Plaintiff also seeks an award of adequate and reasonable daily maintenance.[2]

By its motions to dismiss or for summary judgment, defendant contends that plaintiff is bound by the terms of the collective bargaining agreement negotiated by his union on his behalf. Thus, defendant argues that as a matter of law plaintiff can recover no greater daily sum for maintenance than the amount established in the collective bargaining agreement. Plaintiff counters defendant's motion by arguing that $8.00 per day is an unreasonably low daily rate of maintenance in light of the actual cost of food and lodging in the San Francisco Bay Area. Plaintiff contends that the right to reasonable maintenance cannot be limited by a collective bargaining agreement.

"Maintenance" is the duty of a shipowner to provide food and lodging to a seaman who becomes ill or injured while in the service of the ship. The shipowner's duty of maintenance continues until the seaman reaches the point of maximum medical recovery. *Vaughan v. Atkinson,* 369 U.S. 527, 531, 82 S.Ct. 997, 999–1000, 8 L.Ed.2d 88 (1962); *Caulfield v. AC & D Marine,*

---

**2.** Plaintiff's lawsuit also involves a dispute as to the period of time during which plaintiff is entitled to maintenance. Defendant contends that plaintiff became fit for duty on October 29, 1982, and so is not entitled to maintenance

payments beyond that date. Plaintiff contends that he is not yet fit for duty, and remains entitled to maintenance payments. This dispute will not be discussed further in this Opinion as it is not relevant to defendant's current motion.

*Inc.,* 633 F.2d 1129, 1131 (5th Cir.1981). The duty of maintenance is coupled with the duty of cure: to provide the ill or injured seaman with proper medical care until the seaman reaches the point of maximum medical recovery. *Calmar S.S. Corp. v. Taylor,* 303 U.S. 525, 528, 531–32, 58 S.Ct. 651, 653, 654–655, 82 L.Ed. 993 (1938).

■ Maintenance and cure is a right granted by general maritime law. It has been recognized for hundreds of years. In fact, the duty of the shipowner to provide for the ill or injured seaman can be traced as far back as the Sea Codes of the Middle Ages. 2 Norris, *The Law of Seaman,* § 540 (1970).

■ The duty to provide maintenance and cure arises from the unique hazards attendant to the work of seamen. Its purpose is to foster the combined goals of encouraging marine commerce and assuring the well-being of the seaman. *Aguilar v. Standard Oil Co.,* 318 U.S. 724, 727, 63 S.Ct. 930, 932, 87 L.Ed. 1107 (1943). The purpose of, as well as the need for, the duty to provide maintenance and cure were aptly described by Justice Story in 1823:

> Seamen are by the peculiarity of their lives liable to sudden sickness from change of climate, exposure to perils, and exhausting labour. They are generally poor and friendless, and acquire habits of gross indulgence, carelessness, and improvidence. If some provision be not made for them in sickness at the expense of the ship, they must often in foreign ports suffer the accumulated evils of disease, and poverty, and sometimes perish from the want of suitable nourishment. Their common earnings in many instances are wholly inadequate to provide for the expenses of sickness; and if liable to be so applied, the great motives for good behaviour might be ordinarily taken away by pledging their future as well as past wages for the redemption of the debt.

On the other hand, if these expenses are a charge upon the ship, the interest of the owner will be immediately connected with that of the seamen. The master will watch over their health with vigilance and fidelity. He will take the best methods, as well to prevent diseases, as to ensure a speedy recovery from them. He will never be tempted to abandon the sick to their forlorn fate, but his duty, combining with the interest of his owner, will lead him to succor their distress, and shed a cheering kindness over the anxious hours of suffering and despondency.

*Harden v. Gordon,* 11 Fed.Cas. 480, 483 (C.C.D.Me.1823) (No. 6047).

■ A lawsuit by a seaman to recover maintenance is separate and distinct from a suit for injury under the Jones Act. Norris, *supra,* § 545, n. 11. The duty to provide maintenance to the ill or injured seaman is imposed irrespective of the presence or absence of negligence on the part of the seaman or the shipowner. *Id.*

■ The ill or injured seaman is entitled to the maintenance that is sufficient to supply him with food and lodging of the kind and quality he would receive if he were still on board the vessel. *Calmar S.S. Corp. v. Taylor,* 303 U.S. at 528, 58 S.Ct. at 653. The monetary value of such maintenance is a question of fact to be resolved by the trial court based upon all of the evidence before it. Norris, *supra,* § 607, n. 6. The evidence that can be considered by a court in determining the appropriate award for daily maintenance includes: the costs the seaman incurs in acquiring food and lodging, expert testimony regarding the cost of food and lodging in the area, rates of maintenance provided in local union contracts, and previous awards ordered by the courts. Evidence of the seaman's actual expenditures is the preferred method of determining the amount of the daily maintenance payment owed to the seaman. *Morel v. Sabine Towing & Transportation Co. Inc.,* 669 F.2d 345, 347 (5th Cir.1982).[3]

---

**3.** It should be noted that maintenance payments

for lodging are not owed to the seaman by the

In the 1950's the trial courts, as one court recently phrased it, "fell into the habit" of awarding maintenance at a rate of $8.00 per day. *Incandela v. American Dredging Co.*, 659 F.2d 11, 14 (2nd Cir. 1981). With the advent of collective bargaining agreements in the 1960's, the union and the shipowners made the rate of maintenance a subject of negotiation, and uniformly adopted the $8.00 figure as the daily rate of maintenance.

In recent cases for maintenance where a seaman is not bound by a collective bargaining agreement that sets forth the amount of daily maintenance, courts have found that the common $8.00 per day award is a "starvation payment," *Harper v. Zapata Off-Shore Co.*, 563 F.Supp. 576, 582 (E.D.La.1983), and an "unfulfilled promise to seamen that their maintenance needs will be met." *Incandela*, 659 F.2d at 14. In those cases the courts have awarded maintenance well in excess of $8.00 per day. *Caulfield v. AC & D Marine*, 633 F.2d at 1132–33 ($15.00 per day); *Robinson v. Plimsoll Marine, Inc.*, 460 F.Supp. 949, 950 (E.D.La.1978) ($15.00 per day); *Morel v. Sabine Towing*, 669 F.2d at 347 ($20.00 per day); *Autin v. Otis Engineering Corp.*, 641 F.2d 197, 199 (5th Cir.1981) ($20.00 per day); *Incandela*, 659 F.2d at 14 ($26.80 per day); *Harper v. Zapata Off-Shore Co.*, 563 F.Supp. at 583–84 ($40.00 per day). Each of these courts looked primarily to the actual expenses of the seamen in making these daily maintenance awards. Thus, it is now generally recognized that $8.00 per day is no longer a sufficient sum for a seaman to secure lodging and three meals. 1 B *Benedict on Admiralty* § 51, pp. 4–74 (1982); *cf. Grove v. Dixie Carriers, Inc.*, 553 F.Supp. 777, 780 (E.D.La.1982).

In considering the adequacy of $8.00 per day for securing food and lodging in the San Francisco Bay Area, this Court must agree with the *Harper* and *Incandela* courts' description of the $8.00 per day maintenance figure. Since the 1950's when the $8.00 per day figure was originally set, there has been an astounding increase in the cost of food and lodging. The expectation that a seaman can rent a room and purchase three meals on $8.00 per day in the San Francisco Bay Area is unrealistic, if not pure fantasy. The reality of the seaman's inability to obtain food and lodging in the Bay Area for any figure close to $8.00 per day is a fact of which the Court may, and will, take judicial notice. Fed.R. Evid. 201(b).[4]

Even though it is clear that a seaman will be unable to secure a room and three meals a day in the San Francisco Bay Area on $8.00, the question for the Court is whether the seaman is nevertheless limited to the $8.00 per day maintenance payment by the collective bargaining agreement between his union and defendant shipowner. The Court holds that a seaman who becomes ill or injured while in the service of his ship is not bound by the maintenance figure set forth in a collective bargaining agreement in instances in which the payment is not adequate to provide him with lodging and three meals per day of the kind and quality he would have received aboard the vessel. Whether the maintenance figure in the collective bargaining agreement is adequate to provide the seaman with such lodging and meals is necessarily an individual determination. The Court will make this determination on a case-by-case basis, based upon the needs of the particular seaman and the costs of food and lodg-

---

shipowner when the seaman lives with his parents, or with other persons who do not charge for the seaman's lodging, while he is recuperating. Norris, *supra*, § 572, n. 10. Unless stated otherwise, the Court assumes in its Opinion that money for both food *and* lodging are required by the ill or injured seaman.

**4.** The Court chooses not to rely at this time on plaintiff's submission of the rather high esti-

mates by travel agents of the cost of food and lodging in San Francisco similar to that aboard a vessel. The *actual* cost of such food and maintenance is a question to be resolved in later proceedings. For purposes of ruling upon defendant's motion, it is sufficient for the Court to take judicial notice that $8.00 per day is an unreasonably low sum for obtaining a room and three meals in the San Francisco Bay Area.

ing in the locality where the seaman is recovering.[5]

Courts have diligently protected the historic right to maintenance from contractual arrangements, and have often emphasized the non-contractual nature of the right. As earlier noted, the duty to provide maintenance and cure is imposed upon the shipowner by maritime law. *The Iroquois,* 194 U.S. 240, 242, 24 S.Ct. 640, 641, 48 L.Ed. 955 (1904). This duty is "annexed" to the seaman's employment on the ship, and therefore is contractual only "in the sense that it has as its source in a relation that is contractual in origin." *Cortes v. Baltimore Insular Lines,* 287 U.S. 367, 371, 53 S.Ct. 173, 174, 77 L.Ed. 368 (1932). Thus, once a seaman begins service on a ship, the maritime law annexes the duty of maintenance and cure to the contractual relationship between seaman and employer. *DeZon v. American President Lines,* 318 U.S. 660, 667, 63 S.Ct. 814, 818, 87 L.Ed. 1065 (1943). Though the right of the seaman to maintenance and cure is an incident or implied term of the contract for maritime employment, *Evans v. Blidberg Rothchild Co.,* 382 F.2d 637, 639 (4th Cir.1967), the right clearly arises not from the contractual relationship but from general maritime law. *Dryden v. Ocean Accident & Guarantee Corp., Ltd.,* 138 F.2d 291, 292 (7th Cir.1943). Thus, based upon the origin of the right to maintenance and cure and its importance, courts hold that no private agreement may abrogate the right. *Cortes v. Baltimore Insular Lines,* 287 U.S. at 371, 53 S.Ct. at 174; *DeZon v. American President Lines,* 318 U.S. at 667, 63 S.Ct. at 818. In *Dryden,* the Seventh Circuit explained the preeminence of the right to maintenance and cure over any contrary contractual arrangement.

Concededly an employee-employer relationship is a contractual one. Presumably many of the details of that relationship—wages, hours, etc., are fixed by specific contractual provisions and are express contractual rights. But the right here sought to be enforced [maintenance and cure] by the seaman was not founded on a "meeting of the minds"—it was inexorably attached by ancient and established maritime *law* to every seaman's contract of employment. The parties have no choice in the matter. It was a duty superimposed by *law* coincidental with the formation of the contract relation. The seaman could not contract against it—his employer's will is powerless to destroy it. This aspect alone reflects the true nature of the right here sought to be enforced. It is a right which the maritime law, in the wisdom of experience, found necessary and just, for the complete protection of seamen, whom maritime law has treated as "wards of admiralty."

138 F.2d at 293. We find this to be good public policy.

Further, in *Vitco v. Joncich,* 130 F.Supp. 945 (S.D.Cal.1955), a district court in California applied very similar language and reasoning to a case involving a collective bargaining agreement. The court noted that "courts of admiralty, while viewing with favor that which augments [the seaman's historic rights to maintenance and cure], ... look with disfavor upon agreements in derogation of those maritime rights." *Id.* at 950–51. (Citations omitted.) On the basis of this analysis, the court refused to enforce a term of the employment contract that limited the length of time that a seaman would receive maintenance and cure. *Id.* The Ninth Circuit affirmed this decision and specifically adopted the district court's reasoning. *Joncich v. Vitco,* 234 F.2d 161, 163 (9th Cir.1956).

Only one court has directly confronted the question of the enforceability of a col-

---

**5.** Defendant asserts that such case-by-case approach will cause great amounts of litigation and vitiate the certainty provided by the collective bargaining agreement. This case-by-case litigation was the practice of the courts before the advent of collective bargaining agreements that set maintenance rates. A continuation of that practice is no burden on the courts, especially as the seamen are the wards of the courts. Further, lack of certainty or inconvenience are not reasons to abrogate the seaman's important right to maintenance.

lective bargaining agreement that limited daily maintenance payments.[6] In *Grove v. Dixie Carriers, Inc.*, 553 F.Supp. 777, the court held that, based upon the above-discussed precedent, it would not enforce a maintenance figure set in a collective bargaining agreement if that figure were so low as to be unreasonable. The court found that approval of low maintenance figures would be tantamount to entirely abrogating the obligation to pay maintenance and cure. *Id.* at 780. However, the court also determined that the rate of $8.00 per day was reasonable. *Id.*

■ This Court finds that the figure of $8.00 per day to obtain lodging and three meals per day in the San Francisco Bay Area is so low and unreasonable as to abrogate the shipowner's obligation to pay maintenance. To determine whether a particular rate of maintenance is reasonable, the *Dixie Carriers* court used the test of "some point of reasonableness which would be tantamount to abrogating the obligation to pay maintenance entirely." 553 F.Supp. at 780. This Court believes that the *Dixie Carriers* court's test is too onerous, and that the proper interpretation of *Cortes, et al.* is that the duty to pay maintenance is abrogated when the maintenance payment provided in the collective bargaining agreement is inadequate to allow the seaman to secure lodging and three meals per day of the kind and quality the seaman would have received aboard the vessel.

■ The duty to provide maintenance is "no merely formal obligation and it admits of no merely perfunctory discharge." *De-Zon v. American President Lines*, 318 U.S. at 667, 63 S.Ct. at 819. Providing a maintenance sum that is not adequate for the seaman to secure food and lodging of the kind and quality received aboard the vessel is such a prohibited perfunctory discharge of the duty to provide maintenance to the ill or injured seaman.[7]

The right to maintenance is not simply the right to some provision for food and lodging, no matter what the actual sum be, but the right to lodging and meals of the kind and quality the seaman would have received aboard the vessel. The Court must point out that the quarters of a seaman on a freight vessel are quite basic. If the seaman is not provided with sufficient funds to secure lodging similar to the lodging he had aboard the vessel, he is in essence given insufficient funds to secure any lodging at all. And where the seaman is provided with insufficient funds to secure lodging and meals equivalent to that he received aboard the vessel, the seaman may be forced to choose between securing a room or securing food. The perils of homelessness and malnourishment are those which Justice Story so eloquently stated were to be avoided by the right to, and duty of, maintenance.

■ In addition, maintenance payments that are insufficient for the seaman to obtain adequate lodging and meals have the effect of encouraging the seaman to return to work on the vessel before he has completely recovered from his illness or injury. A further purpose of maintenance noted by Justice Story was the alignment of the interests of the seaman and the shipowner in the seaman's speedy yet complete recovery. This purpose is frustrated where maintenance payments are so inadequate that the seaman is forced to return to work when not completely recovered.

Where a union and an employer have contractually agreed to a maintenance fig-

**6.** The other cases cited by the parties, including *Gajewski v. United States*, 540 F.Supp. 381 (S.D. N.Y.1982); *Dixon v. Maritime Overseas Corp.*, 490 F.Supp. 1191 (S.D.N.Y.1980), *aff'd without opinion*, 646 F.2d 560 (2nd Cir.1980), *cert. denied*, 454 U.S. 838, 102 S.Ct. 145, 70 L.Ed.2d 120 (1981); and *Tague v. American President Lines*, 1975 AMC 1129 (N.D.Cal.1975) are clearly distinguishable as none ruled upon the binding character of such a provision.

**7.** This conclusion is consistent with the holdings of courts that have addressed the scope of the seaman's right to a seaworthy vessel. Seaworthiness is also a right which arises under general maritime law. Courts hold that the seaman's right to a seaworthy vessel cannot be abrogated or limited by contract. *See, e.g., Hudson Waterways v. Schneider*, 365 F.2d 1012, 1016 (9th Cir.1966).

ure that is inadequate, they have abrogated the ancient and important right to and duty of maintenance. Because the duty of maintenance has an origin independent of any contractual relationship of the parties, the parties' contracts cannot alter that duty.

■ Various considerations of policy also compel the conclusion reached by this Court. When sitting in admiralty, the Court must be diligent in protecting seamen, who have historically been wards of admiralty. In protecting its wards, the Court is to "avoid ... the application of the rules of common law which would affect ... [the seamen] harshly because of the special circumstances attending their calling." *Socony-Vacuum Oil Co. v. Smith,* 305 U.S. 424, 431, 59 S.Ct. 262, 266, 83 L.Ed. 265 (1939). Furthermore, the shipowner's liability for maintenance and cure is among the most pervasive of all, and is not to be defeated by restrictive distinctions nor narrowly confined. Any ambiguities or doubts are to be resolved in favor of the seaman. *Aguilar v. Standard Oil Co.,* 318 U.S. at 735, 63 S.Ct. at 936; *see also Vaughan v. Atkinson,* 369 U.S. at 530, 82 S.Ct. at 999. Thus the Court must find unenforceable a collective bargaining agreement that provides a daily maintenance payment that is inadequate to provide the seaman with lodging and meals of the kind and quality he received aboard the ship. *See* Norris, *supra,* § 607 (1982 Supp.). This finding is necessary in order to give full protection to the ancient right of seamen and to protect the seaman as a ward of the court. The Court is not holding that the union and the shipowners cannot make the question of the daily rate of maintenance a subject of bargaining. But the Court must, and does, hold that the union and the shipowners have no power to enforce a collective bargaining agreement that provides a seaman with daily payments that are inadequate to meet his maintenance needs.[8]

■ Defendant contends that a collective bargaining agreement is no mere "private agreement," and its provisions should be enforced in light of the significant national labor policy favoring collective bargaining. Yet, the public policy in support of the ancient right of maintenance must be found to outweigh the national labor policy. The notion that the seaman's right of maintenance can be bargained away is incompatible with the Supreme Court's often expressed view that the right of maintenance cannot be abrogated. The pervasiveness of the ancient right to maintenance is preeminent to the interest in enforcing specific provisions of a collective bargaining agreement.[9] *Janovich v. Vitco,* 234 F.2d 161.

Defendant also argues that the days of Justice Story's friendless seaman are no more because the seaman now has a powerful friend, and negotiating representative, in the union. Because seamen receive wages and other benefits greater than could have possibly been imagined in Justice Story's time, the defendant asserts that the need to protect the seaman is no longer of the same significance. Nevertheless, no court has found that the ancient right to maintenance is in any way altered by the emergence of unions and collective bargaining agreements. In reviewing the benefits provided by the collective bargaining agreement involved in this case, the Court notes that there are no provisions, other than the $8.00 per day maintenance provision, that give lodging and meals to the seaman recovering from illness or injury.[10] The Court finds no basis for re-evalu-

---

**8.** *Compare Maniatis v. Archipelago,* 159 F.Supp. 245, 247 (E.D.Va.1958), *rev'd. on other grounds, Penedo CIA Naviera S.A. v. Maniatis,* 262 F.2d 284 (5th Cir.1959), which suggests that the rate of maintenance cannot be a subject for contract.

**9.** Article 1, Section 2 of the agreement in this case provides that any provision of the agreement in conflict with federal law shall be deemed inapplicable and severed from the agreement. Thus, nonenforcement of certain provisions of the agreement is contemplated by the parties.

**10.** The repatriation provision of the agreement (Article II, section 14) does help the seaman in returning to the United States, or to the original port of engagement, upon becoming ill or injured while in the service of the vessel. Thus, the agreement provides that a seaman cannot

ating the seaman's right to maintenance at this time. The concerns expressed by Justice Story are still present in today's world. The right to maintenance remains an important right of the seaman, and the courts must protect it.

In conclusion, a collective bargaining agreement that establishes a daily rate of maintenance is not binding when the daily rate is inadequate to provide the seaman with food and lodging of the kind and quality he would have received aboard the vessel. Where a seaman seeks to challenge the enforceability of the collective bargaining agreement, he may bring suit and introduce evidence that the daily rate set in the collective bargaining agreement is inadequate. The best evidence of this, as noted earlier, is evidence of the seaman's actual expenditures in securing comparable food and lodging. Once the seaman makes a prima facie case that the daily rate is inadequate, the shipowner has the opportunity to rebut the seaman's evidence. The shipowner might seek to prove that the seaman spent more than necessary to provide him with food and lodging comparable to that provided aboard the vessel, or may seek to prove that the seaman incurred no lodging expenses.[11] But where the evidence shows that the daily maintenance sum set forth in the collective bargaining agreement is insufficient to provide the seaman with adequate maintenance according to his circumstances (i.e., where he recuperated, what quality of lodging and meals he received aboard the ship), the court must disregard this provision of the collective bargaining agreement and award the seaman maintenance that is adequate.

Accordingly, defendant's motion to dismiss or for summary judgment must be denied. Plaintiff has the right to introduce evidence to establish that the $8.00 per day rate of maintenance set forth in the collective bargaining agreement is inadequate to provide him with lodging and meals equivalent to those he received aboard the ship.[12]

Good cause appearing therefor, IT IS HEREBY ORDERED that defendant's motion to dismiss or for summary judgment is DENIED. IT IS FURTHER ORDERED that the parties appear for a status conference on December 15, 1983, at 9:15 a.m.

---

become abandoned in a foreign port. However, there is no indication that this repatriation provision means that the seaman will be returned to a port where he will incur no expenses for lodging and meals.

11. For example, in the present case defendant hints that plaintiff has been recuperating at a family home and did not incur lodging expenses. When a seaman has incurred no lodging expenses, the shipowner's duty of maintenance is limited to providing meals. Norris, supra, § 572, n. 10. And if plaintiff's meals were home cooked, defendant may be able to prove that $8.00 per day was adequate to provide plaintiff with three meals per day of the kind and quality provided aboard the vessel and that $8.00 per day was therefore the limit of their duty of maintenance.

12. Plaintiff suggests that in later proceedings the Court set a rate of daily maintenance, representing the cost of lodging and meals in the San Francisco Bay Area, that can be applied to all lawsuits for maintenance in the Northern District. Such a court-set figure, to the extent it has any binding effect, suffers from many of the same defects as the pre-set limit to maintenance reached between the union and the shipowners. First, the figure would fail to take into consideration changes in the local and national economy affecting the cost of food and lodging, unless the figure were constantly revised. Second, there are too many individual factors applicable in determining a proper maintenance figure for the individual seaman. Such factors include the quality of lodging the particular seaman received aboard the vessel, whether the seaman incurred lodging expenses during his recuperation, and whether the seaman's meals were home cooked. If the parties want the Court to set a figure for maintenance that could serve as a starting point, from which evidence could show that the figure should then be decreased or increased because of the factors affecting the particular seaman, the Court would be willing to consider such a proposal upon request of a party.