Candido CASTRO

v.

M/V AMBASSADOR and its
owners, et al.

Civ. A. No. 86–4323.

United States District Court,
E.D. Louisiana.

March 26, 1987.

Ivan David Warner, III, New Orleans, La., for plaintiff.

J. Dwight LeBlanc, Jr., New Orleans, La., for defendant.

McNAMARA, District Judge.

Before the court is the Motion of Plaintiff, Candido Castro, to Increase Maintenance and Cure. The Defendant, Coordinated Caribbean Transport, Inc. (owner of the M/V AMBASSADOR AMBASSADOR) opposes this Motion.

This Motion, set to be heard on Wednesday, March 11, 1987, is before the court on briefs without oral argument. Having considered the memoranda of counsel and the applicable law, the court rules as follows:

This case arises out of personal injuries allegedly sustained by Plaintiff, Candido Castro, on or about July 17, 1986, while working aboard the M/V AMBASSADOR, a vessel owned and operated by his employer, Coordinated Caribbean Transport, Inc. (C.C.T.). The Plaintiff filed suit against C.C.T. under the Jones Act for negligence and the General Maritime law for maintenance and cure.

Plaintiff's employer, C.C.T., began maintenance payments subsequent to the Plaintiff's accident at the rate of $8.00 per day, in accordance with its contract with the

Seafarers International Union (SIU), of which Plaintiff was a member.[1] Plaintiff has now filed a Motion for Increase in Maintenance payments from $8.00 per day to $20.00 per day.

The Plaintiff's position is that the $8.00 per day rate is inadequate to meet Plaintiff's living expenses as listed in the memorandum filed with Plaintiff's Motion.

The Defendant, C.C.T., takes the position that Plaintiff is only entitled to the $8.00 per day rate of maintenance set forth in the union contract which, the Defendant claims, is binding on the Plaintiff as a member of that union.

A seaman's right to maintenance is implicit in and arises out of the contractual relationship between the seaman and his employer, and is designed to ensure his recovery upon injury or illness sustained in the service of the ship. *Pellotto v. L & N Towing Co.*, 604 F.2d 396 (5th Cir.1979) and cases cited therein. A seaman who is injured or falls ill while he is in the service of the ship is entitled to recover maintenance from his employer or the shipowner. Maintenance is intended to cover the reasonable costs the seaman incurs in acquiring food and lodging ashore until he reaches maximum cure. The rate at which maintenance is to be paid ordinarily reflects the cost of food and lodging in a particular area, comparable to that received on board the vessel. *Tate v. American Tugs, Inc.*, 634 F.2d 869 (5th Cir.1981), *Caulfield v. AC & D Marine, Inc.*, 633 F.2d 1129 (5th Cir.1981), *Robinson v. Plimsoll Marine, Inc.*, 460 F.Supp. 949 (E.D.La.1978).

This court has previously held that in the absence of a union contract expressly providing for a specific rate of maintenance, the amount of maintenance to which an ill or injured seaman is entitled is a question of fact to be determined by the trial court based upon the evidence presented, including evidence as to the costs the seaman incurs in acquiring food and lodging prior to reaching maximum cure. However, if there exists a valid collective bargaining agreement between the seaman's union and his employer, which expressly sets forth the rate of maintenance to be paid a seaman employee should he become ill or injured, then the Plaintiff, as a party to that agreement, will be bound by its terms. *Grove v. Dixie Carriers, Inc.*, 553 F.Supp. 777 (E.D.La.1982).

The Plaintiff in the present case at the time of the accident was a member of the SIU and the contract in effect at the time of the Plaintiff's accident clearly provides that maintenance for union members be limited to $8.00 per day. Article II, Section 13 of the 1985 New Standard Freightship Agreement, (effective January 1, 1985 through June 15, 1987) between the SIU and contracted companies, (which includes C.C.T.) states as follows:

> Section 13. *Maintenance and Cure.* When a member of the unlicensed personnel is entitled to maintenance and cure under the maritime law, he shall be paid maintenance at the rate of $8.00 per day for each day or part thereof of entitlement. (SIU Contract at page 5.).

This court recognizes that there is some point of reasonableness which cannot be exceeded in setting the contractual rate of maintenance and which would be tantamount to abrogating the obligation to pay maintenance and cure entirely. *Grove v. Dixie Carriers, Inc.*, *supra* at 780. However, it certainly cannot be said that a rate of $8.00 per day for maintenance in the present case in any way violates this standard of reasonableness. This daily rate, therefore, is not an abrogation of maintenance.

To support Plaintiff's contentions Plaintiff listed his "monthly obligations" (see attached) titled *Exhibit One* which was attached to his Motion.[2] These expenses

---

1. Seafarers International Union (SIU), on behalf of its Union members, entered into a collective bargaining agreement with Coordinated Caribbean Transport, Inc. (C.C.T.), whereby the Union agreed to furnish C.C.T. with personnel for employment aboard vessels owned and/or operated by C.C.T.

2. Plaintiff has also cited numerous cases, including some in this district, which have awarded increased maintenance payments in accord-

were broken down into two main categories. Those expenses incurred in Honduras ("Honduran Expenses") which include his mortgage payment, utilities, automobile, groceries, child care, childrens educational expenses, and medical expenses of his family. The second category of expenses are those incurred in New Orleans ("New Orleans Expenses") which include his rent, utilities, telephone, transportation, food, and payments on his refrigerator.

Since maintenance payments are only intended to cover the reasonable costs the seaman incurs in acquiring food and lodging ashore comparable to that received aboard the vessel, most of the Plaintiff's listed "obligations" are irrelevant. Certainly the Plaintiff's "Honduran Expenses" have nothing to do with "expenses incurred in acquiring food and lodging ashore." Turning now to the Plaintiff's "New Orleans Expenses," neither his telephone payments nor his transportation expenses are expenses incurred in acquiring food and lodging ashore.

Regarding the "New Orleans Expense" listed as Universal Furniture Store (refrigerator), while access to a refrigerator may be a necessary expense covered by maintenance payments, the cost of purchasing a refrigerator is not maintenance.

The only expenses listed which this court finds are maintenance would be the "New Orleans Expenses" of rent, utilities and food. These expenses total a monthly expense of $262.50 per month as provided in the documentary submission by Plaintiff (see attached). The $8.00 per day rate afforded by the union contract results in approximately $240.00 per month in payments to the Plaintiff which approximately covers the living expenses this Plaintiff is entitled to under the maintenance obligation of his employer, C.C.T.

The preceding analysis of this Plaintiff's living expenses is illustrative of the reasonableness of the $8.00 per day rate agreed to in the collective bargaining agreement. The fact that the actual living expenses submitted by this Plaintiff exceeded the $8.00 per day rate afforded by the union contract has no effect on this ruling since this "agreed to rate" was not so low as to be unreasonable and thus resulting in an abrogation of maintenance. *Grove, supra* at 780.

The Plaintiff cites in his memorandum *Rutherford v. Sea Land Service, Inc.*, 575 F.Supp. 1365 (N.D.CA 1983), which held that the duty to pay maintenance is abrogated when the maintenance payment provided in a collective bargaining agreement is inadequate to allow the seaman to acquire food and lodging comparable to what would have been received aboard the vessel. This decision has been criticized, however, by the Ninth Circuit which held that the district court in Rutherford "unduly discounted and undervalued important policies which support the enforceability of the maintenance rate involved within a collective bargaining agreement." *Gardiner v. Sea Land Services*, Inc., 786 F.2d 943 (9th Cir.1986). Notwithstanding the criticism of the *Rutherford* decision, this court has shown through its analysis of the Plaintiff's living expenses enumerated in *Exhibit One* that the maintenance payment provided for in the union contract is adequate.

Accordingly, this court finds that the Plaintiff, Candido Castro, is bound by the maintenance rate of $8.00 per day as afforded by the Seafarers International Union Contract, as specified in the collective bargaining agreement between his employer, Coordinated Caribbean Transport, Inc., and the Union; and therefore his Motion for increase in maintenance payments should be and and is DENIED.

ance with the seaman's estimated living expenses ashore. (*See, e.g., Robinson v. Plimsoll Marine, Inc., supra.*) However, these cases were found to be distinguishable factually in that the seaman was not a member of the contracting union, and, therefore, not a party to the collective bargaining agreement, as in the present case.

EXHIBIT ONE

## CANDIDO CASTRO'S MONTHLY OBLIGATIONS

| CREDITOR | MONTHLY EXPENSE | |
|---|---|---|
| **HONDURAS** | | |
| Where wife and children live | | |
| 1. Constacia Bank—San Pedro Sula Mortgage on House | $ 220.00 | |
| 2. UTILITIES | | |
| A. Electricity—ENE Electric | 60.00 | |
| B. Water—Dina Water Company | 12.00 | |
| 3. AUTOMOBILE Maintenance and upkeep | 100.00 | |
| 4. GROCERIES | 250.00 | |
| 5. CHILD CARE Live in person, room and board | 75.00 | |
| 6. EDUCATION School books and clothes | 50.00 | |
| 7. MEDICAL Four children monthly checkups | 60.00 | ($15.00 each child) |
| **TOTAL (HONDURAS)** | $ 842.00 | |
| | | |
| **NEW ORLEANS** | | |
| 1. UNIVERSAL FURNITURE STORE (refrigerator) | $ 63.00 | |
| 2. RENT, pays ½ of $175.00 | 87.50 | |
| 3. NOPSI—electric bill | 15.00 | |
| 4. SOUTH CENTRAL BELL | 15.00 | |
| 5. TRANSPORTATION Most by bus | 40.00 | |
| 6. FOOD | 160.00 | |
| **TOTAL (NEW ORLEANS)** | $ 317.50 | |
| **GRAND TOTAL** | $1,159.50 | |