### Michael L. WILLIAMS

v.

### TIDEX INTERNATIONAL, INC., et al.

Civ. A. No. 85–4061.

United States District Court,
E.D. Louisiana.

Sept. 30, 1987.

---

James A. Wysocki, Heisler & Wysocki, New Orleans, La., for plaintiff.

Michael D. Riley, New Orleans, La., for defendants.

## MEMORANDUM OPINION

MENTZ, District Judge.

The Court has before it the motion of the plaintiff, Michael Williams, for a new trial (which is actually a motion for reconsideration of this Court's order granting the defendant's motion for summary judgment). Three issues had been presented on the motion for summary judgment, and the Court ruled in favor of the defendant on all of these issues. Presented for review were (1) the extent to which plaintiff was entitled to wages, (2) whether the plaintiff was entitled to double wages, and (3) whether the plaintiff was entitled to punitive damages for failure to pay maintenance and cure.

The Court's holding was based in part on the holding of Judge A.J. McNamara of this district in the case of *Dowdle v. Offshore Express*. The Court found the rationale and analysis therein to be sound and convincing, and followed the reasoning of Judge McNamara. However, subsequent to this Court's granting defendant's motion, the Court of Appeal reversed Judge McNamara's ruling. *Dowdle v. Offshore Express*, 809 F.2d 259 (5th Cir.1987). The plaintiff has consequently moved for reconsideration of this Court's ruling on all issues. Although the defendant has valiantly attempted to distinguish *Dowdle*, the Court is compelled to VACATE IN PART the summary judgment. However, the Court affirms its earlier ruling on the other issues, and supplies reasons more thorough than those rendered in open court at the time of the hearing.

The plaintiff was working for the defendant as an "ocean master" aboard supply vessels in Tidex's Brazilian Operations. The plaintiff's work contracts ran for three months with options at the conclusion. In September of 1982, the plaintiff was working under a contract signed in February, 1982 and subsequently extended for three month intervals. In September, the plaintiff left the vessel (later stating he did so because he felt ill) and was fired for being absent without permission. Plaintiff was discharged on September 15, 1982, and was repatriated. Plaintiff was rehired on November 1, 1982. In August, 1983, plaintiff was laid off for economic reasons and filed a claim for medical expenses resulting from the above mentioned illness (it was determined that he had hepatitis). Once the plaintiff filed his complaint, Tidex investigated, and paid for his medical treatment and maintenance for September 16—November 1, 1982.

## WAGE ISSUE

Central to a determination of whether the plaintiff can recover wages is the issue of what time period controls. There are three possible options: (1) the end of the voyage, (2) the end of the contractual period, and (3) the contractually specified period. The law is well settled that option No. 1 applies when the articles specify or contemplate a voyage of specific duration. 2 Norris, *The Law of Seamen*, § 544 (3d Edition). However, where the articles are for a specified period (as here), then the seaman can recover wages until the end of the contractual period or until he is fit to return to work. *Id.* Thus, it would seem that option No. 2 would control and the plaintiff could recover wages until November 10, 1982, at which point he returned to work. However, the employment contract specifies that wages will be paid only until the end of the pay period, if the employee becomes ill while on the job. If the employee is fired for cause, then the contract specifies that wages cease immediately. If the employee is fired without cause, wages will be paid until the point of return to the United States. Therefore, depending upon whether the plaintiff was terminated without cause, with cause, or because of illness, the latest date at which he was entitled to wages would be September 15th. The plaintiff contends that the contract is unclear, and therefore it should be construed against the defendant. However, it appears to the Court that the contract is quite clear on these points.

There seems also to be a dispute as to the nature of the plaintiff's working arrangements. The defendant claims that the contract, executed February 3, 1982, was extended in three month intervals (the contract specified one such three month extension). Thus, the defendant claims the then existing contract was the one signed in February; such that the employment arrangements were as follows:

February 3—May 3, 1982: Contract

May 4—August 4, 1982: Extension # 1

August 5—November 5, 1982: Extension # 2

For some unknown reason the plaintiff disagrees with this analysis, stating in his "Contested Issues" that the arrangements were in a series of sixty day arrangements. However, in his memorandum, plaintiff contends the following:

February 3—May 3, 1982:
Contract Period

May 4—August 4, 1982: Contract Period

August 5—August 25, 1982: Vacation

August 25—November 25, 1982: Contract Period

Thus, the plaintiff adopts the three month extension interpretation.

Although the contract contemplates only one three month extension, and requires issuance of a new "Working Agreement," the parties have agreed that, in fact, he was covered by the contract during the period at issue.

■ Thus, the real issue before the Court is whether the contractual provisions can modify the rule that wages are due until the end of the contract or until the plaintiff returns to work.

As mentioned, Judge McNamara had this same issue before him in *Dowdle v. Offshore Express, Inc.*, C.A. No. 84–3791. In his opinion, Judge McNamara reasoned that as the rate and mode of payment of maintenance and cure could be regulated by contract, so could wages, citing *Grove v. Dixie Carriers, Inc.*, 553 F.Supp. 777 (E.D. La.1982) and *Hodges v. Keystone Shipping Co.*, 578 F.Supp. 620 (S.D.Texas 1983).

This Court initially agreed with this rationale. However, the Court of Appeal did not, holding that

No agreement is competent to abrogate the seaman's right to maintenance and cure. *Cortes v. Baltimore Insular Line, Inc.*, 287 U.S. 367, 371, 53 S.Ct. 173, 174, 77 L.Ed. 368 (1932). Correspondingly, the seaman's right to unearned wages also may not be contractually abrogated. *See Vitco v. Joncich*, 130 F.Supp. 945, 951 (S.D.Cal.1955) (absent clear quid pro quo received in exchange for contractual abrogation of right to unearned wages, such contractu-

al abrogation is ineffective), aff'd, 234 F.2d 161 (9th Cir.1956)....

Even assuming arguendo that the district court's decision in *Grove* is correct —a question never addressed by and not presently before this court—there is a fundamental difference between contractual regulation of the rate of maintenance payments and contractual elimination of such payments altogether.

*Id.* at 263.

The contractual clause at issue in *Dowdle* provided that "If the Employee is injured or becomes ill during the term of the contract and is unable to return to his position aboard the Company vessel, he will be repatriated at the expense of the Company and his wages will cease upon repatriation." The Court of Appeal rejected the argument of Offshore Express that this provision is merely an exercise of the shipowners right to fix the contractual period of employment. In so doing, the Court stated that

It is clear from the structure and the language of this contract that the clause does not fix the period of employment, but provides for the termination of wages in the event of repatriation because of illness or injury. The clause in question cannot operate to deprive Dowdle of his right to unearned wages.

*Id.* at 264.

In the present case, the defendant attempts to distinguish *Dowdle* by asserting that, inasmuch as the contract herein provides for payment of wages until the end of the pay period wherein plaintiff falls ill and is repatriated, this contract is at variance with the *Dowdle* contract. The defendant further argues that, as the contract was essentially for an indeterminate period, a limit was needed in the event of illness, and that a shipowner is therefore authorized to limit such wage payments. The defendant asserts that Tidewater's contract cannot be construed as an elimination of the seaman's right to unearned wages; it merely establishes the employment period for purposes of the payment of unearned wages.

This Court finds merit in such an argument. However, it is simply not sufficient to overcome the clear holding of *Dowdle* that "It is clear from the structure and language of this contract that the clause does not fix the period of employment, but provides for the termination of wages in the event of repatriation because of illness or injury." *Id.,* 809 F.2d at 264. Simply because a different termination point is at issue here than in *Dowdle* does not make it valid. The mandate of *Dowdle* is that wages must be paid to the end of the contract, which seems to this Court to be the three month period. At the very least, a factual issue exists as to the nature of the end of the "contract period" so as to require a trial on that issue.

## DOUBLE WAGE ISSUE

■ The penalty wage statute, 46 U.S.C. 596, specifically exempts masters from coverage. The plaintiff herein was the master of the vessel, the employment contract termed him as such, and it is clear from the affidavits that he was treated as such. Hence, by its very terms, the plaintiff is not covered by 46 U.S.C. 596. The plaintiff, however, contends that he was not a master in the sense that Congress intended. Due to technological changes, plaintiff asserts that the "master" of a vessel would be the person directing the vessel from shoreside. Thus, what plaintiff is asking this Court to do is determine "when is a master not a master".

*Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982), is the most recent and definitive pronouncement on the wage penalty statute from the Supreme Court. Therein, the defendant argued that a literal interpretation of the act would be absurd, clearly not what Congress intended. The Court rejected this reasoning, stating,

Respondent, however, is unable to support this view of legislative purpose by reference to the terms of the statute. "There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes." *United States v. American Trucking Assns., Inc.,* 310 U.S. 534, 543, 84 L.Ed.

1345, 60 S.Ct. 1059 [1063] (1940). See *Caminetti v. United States,* 242 U.S. 470, 490, 61 L.Ed. 442, 37 S.Ct. 192 [196] (1917).

. . . . .

Respondent argues, however, that a literal construction of the statute in this case would produce an absurd and unjust result which Congress could not have intended.

. . . . .

It is true that interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available. *See United States v. American Trucking Assns., Inc.,* 310 U.S., at 542–543, 84 L.Ed. 1345, 60 S.Ct. 1059 [at 1063]; *Haggar Co. v. Helvering,* 308 U.S. 389, 394, 84 L.Ed. 340, 60 S.Ct. 337 [339–340] (1940). In refusing to nullify statutes, however hard or unexpected the particular effect, this Court has said:

"Laws enacted with good intention, when put to the test, frequently, and to the surprise of the law maker himself, turn out to be mischievous, absurd or otherwise objectionable. But in such case the remedy lies with the law making authority, and not with the courts." *Crooks v. Harrelson,* 282 U.S. 55, 60, 75 L.Ed. 156, 51 S.Ct. 49 [51] (1930).

. . . . .

It is probably true that Congress did not precisely envision the grossness of the difference in this case between the actual wages withheld and the amount of the award required by the statute. It is enough that Congress intended that the language it enacted would be applied as we have applied it. The remedy for any dissatisfaction with the results in particular cases lies with Congress and not with this Court. Congress may amend the statute; we may not. *See Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. [102] at 123–124, 64 L.Ed.2d 766, 100 S.Ct. 2051 [at 2063–2064 (1980)]; *Reiter v. Sonotone, supra,* [442 U.S. 330] at 344–345, 60 L.Ed.2d 931, 99 S.Ct. 2326 [at 2333–2334 (1979)].

Thus, by applying the same analysis to the issue at hand, the only conceivable result is that plaintiff, as a master, cannot recover penalty wages. It is clear to this Court that to find the plaintiff is entitled to the largess of the penalty wage statute would be contrary to the statute and *Griffin.* If Congress desires to have masters covered under the act, it must so specify. The Court is without authority to read into the act factors not therein authorized by Congress.

## PUNITIVE DAMAGES ISSUE

■ The plaintiff contends that he is entitled to punitive damages for the defendant's delay in paying his maintenance and cure. The standard to determine the validity of a punitive damage claim is articulated in *Harper v. Zapata Offshore Company,* 741 F.2d 87 (5th Cir.1984). The *Harper* court stated that to be given an award for punitive damages or attorney fees, such "... must be grounded on the same type of egregious shipowner conduct exhibiting wanton and intentional disregard of a seaman's rights" (citations omitted).

The defendant is correct that the *Harper* court noted that in the cases in which punitive damages have been granted, there is a "... common element of a shipowner's default, either in failing to provide maintenance and cure or in failing to investigate an injured seaman's claim."

It is important to note in the instant case that the plaintiff did not claim any maintenance and cure benefits until more than a year after his alleged illness. The Fifth Circuit recently affirmed this Court's granting of summary judgment and took the opportunity to articulate the summary judgment standards. The court noted that

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role. The rule states that judgment "shall be rendered ... if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material.

An issue is genuine if the evidence supporting its resolution in favor of the party opposing summary judgment, together with any inferences in such party's favor that the evidence allows, would be sufficient to support a verdict in favor of that party. If, on the other hand, the evidence offered by both the moving and opposing parties would support only one conclusion and, even if all the evidence to the contrary is fully credited, a trial court would be obliged to direct a verdict in favor of the moving party, the issue is not genuine. Trial of such an issue would be wasted effort. Thus employed to decide cases in which there is no genuine issue, Rule 56 is a means of disposing of meretricious disputes and serves the "very mission" attributed to it by the Advisory Committee: "to pierce the pleadings and to assess the proof to see whether there is a genuine issue for trial."

*Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis,* 799 F.2d 218, 222–223 (5th Cir.1986); *See* also, *Phillips Oil Co. v. OKC Corp.,* 812 F.2d 265, 273, n. 15 (5th Cir.1987).

The Court finds the record bereft of any evidence to suggest that the plaintiff would be entitled to an award of punitive damages. To the contrary, all evidence established that the defendant acted reasonably, and accordingly, such an issue is appropriate for disposition on a motion for summary judgment.

In light of the foregoing reasons, the plaintiff's motion for reconsideration is GRANTED IN PART and DENIED IN PART, this matter is hereby REOPENED and reinstated on the trial calendar.